Harvey A. HANSEN and Annette
M. Hansen, Appellants,

v.

Marvin P. DAVIS and Arlene
Lani Davis, Appellees.

No. S–13210.

Supreme Court of Alaska.

Nov. 6, 2009.

Rehearing Denied Jan. 12, 2010.

Christopher J. Boyette, McCarty & Boyette, Ketchikan, for Appellants.

H. Clay Keene and Blake M. Chupka, Keene & Currall, P.C., Ketchikan, for Appellees.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

When William Rodgers sold Lot 53–A in Ketchikan to Marvin and Arlene Lani Davis in 1984, he reserved an easement[1] across that lot to access the adjacent lot, Lot 52, which he apparently had hoped to buy at a future date. But Rodgers never used the easement to access the adjacent property, and the Davises planted a garden covering most of the easement area and built a greenhouse within the easement. Harvey and Annette Hansen purchased Lot 52 in 2006 and subsequently bought the rights to the easement on Lot 53–A from Rodgers's widow in June 2007. The Hansens then cleared the easement, built a road, and almost completed installing water and sewer lines. In July 2007 the Davises sued the Hansens for trespass, alleging that their adverse use of the easement had extinguished it and that, alter-

---

1. "An easement creates a nonpossessory property right to enter and use land in the possession of another [the servient estate owner] and obligates the possessor [of the burdened land] not to interfere with the uses authorized by the easement." RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2(1) (2000).

natively, Rodgers's widow had ineffectively transferred title to the easement to the Hansens. Following a two-day trial, the trial court determined that the easement had been extinguished by the Davises' adverse use before the Hansens purchased the adjacent property. We conclude that although an easement can be extinguished by prescription, the prescriptive period for adverse use of an easement does not begin until the activity in the easement area by the owner of the servient estate unreasonably interferes with the easement holder's use of the easement. Here, the Davises' level of activity in the easement area was not sufficiently adverse to trigger the prescriptive period until 2003 at the earliest, an insufficient length of time to extinguish the easement. We thus reverse the superior court's decision that the easement was extinguished by adverse use and remand for further proceedings on the question of whether title to the easement was effectively transferred.

## II. FACTS AND PROCEEDINGS

### A. Facts

Marvin and Arlene Lani Davis and Harvey and Annette Hansen are neighbors in Ketchikan. The Hansens own Lot 52, which is adjacent to the Davises' property, Lot 53–A. On the other side of Lot 53–A is Lot 53–B, which is owned by Stephen and Sherilynn Boehlert.

Lot 53–A and Lot 53–B were originally owned by Mary Woodley–Mateu. When Woodley–Mateu subdivided Lot 53 to create Lot 53–A and Lot 53–B in 1983, she created an access easement across Lot 53–B. Woodley–Mateu sold Lot 53–A to William Rodgers in January 1984, and Rodgers sold the property to the Davises in April. The warranty deed conveying Lot 53–A to the Davises reserved an easement across Lot 53–A to access Lot 52, which Rodgers allegedly had hoped to buy at a future date. The deed described this reservation as "a private easement for access and ingress and utilities and sewer across Lot 53–A, for the benefit of Lot 52, U.S. Survey 2402. Said easement to run along the westerly 15 feet of Lot 53–A along

the joint boundary of Lot 53–A and the unsubdivided portion of Lot S, U.S. Survey 2402." The deed's reservation of the easement further provided that "[s]aid easement shall be only for the benefit of Grantor, his grantees, heirs and assigns."

After purchasing Lot 53–A, the Davises sought a legal opinion as to the validity of the easement reserved in the deed. They were advised in a letter dated July 8, 1985 that the easement was not legally enforceable.[2] That fall the Davises began building frames for a garden in the easement area, and by 1987 their garden covered most of the easement. The Davises maintained this garden until the late nineties. The Davises also built a greenhouse within the easement in 2003, but by this time they were gardening less and their garden no longer covered most of the easement. It is undisputed that Rodgers never used the easement to access Lot 52, apparently because Rodgers never owned Lot 52.

The Hansens bought Lot 52 in July 2006. The Davises gave the Hansens limited access across their property in January and February 2007 to remove logs from Lot 52. In early February the Hansens offered the Davises $5,000 to access their property through the Davises' property. But the Davises turned down the offer and asked the Hansens to remove all of the equipment for the logging operation from Lot 53–A. The Hansens removed the equipment and the next contact with the Davises appears to have been in June 2007.

That month the Hansens purchased from Rodgers's widow, Christine Riegler, the easement that Rodgers had reserved when he sold Lot 53–A to the Davises. Rodgers had died in Ohio in 2002. In his will, Rodgers appointed Riegler as the executrix of his estate and made her the beneficiary of the "rest and residue" of his estate. Rodgers's will did not specifically devise the easement reserved in the 1984 deed for Lot 53–A.

▇ The Hansens informed the Davises that they had purchased the easement across Lot 53–A, that they planned to access their

---

**2.** Although there was testimony about the letter at the trial, the letter was not offered or admitted into evidence.

property using the easement, and that they wanted the Davises to clear the easement. After the Hansens learned that the Davises did not intend to remove anything from the easement area, the Hansens disassembled and removed the garden frames and greenhouse themselves and then cleared the area using a weed-eater.[3] The Hansens also built a road and nearly completed installation of water and sewer lines.

### B. Proceedings

The Davises sued the Hansens in early July 2007, alleging trespass and damage to their property. In their complaint, the Davises claimed that their adverse use of the easement had extinguished it. The Davises also asserted that the Hansens had a defective claim of title to the easement across their property, arguing that Rodgers's widow had not successfully transferred the easement to the Hansens because the deed failed to comply with the Alaska Probate Code. The Hansens filed an answer and counterclaim, seeking a judgment quieting title to the easement in their favor and an order enjoining the Davises from interfering with their use and enjoyment of the easement.

In February 2008 the Davises sought summary judgment on their claim that the Hansens' claim of title to the easement across their property was defective, arguing that Rodgers's widow failed to file an ancillary probate proceeding in Alaska before transferring the easement to the Hansens. In asking the superior court "to determine the validity of [the Hansens'] title to the alleged easement across Lot 53[-]A benefiting Lot 52," the Davises noted that "[t]he threshold issue in this dispute is [the Hansens'] right to access Lot 52 by means of the easement across Lot 53–B and an alleged easement

across Lot 53–A." The Hansens opposed the motion and cross-moved for summary judgment on the claim, arguing that the technical legal defect in transferring title to the easement had been cured and that they thus held legal title to the easement.

Superior Court Judge Michael A. Thompson denied the Davises' summary judgment motion, reasoning that the deed transferring Lot 53–A from Rodgers to the Davises expanded the existing easement appurtenant benefitting Lot 53–A across Lot 53–B and that the Davises took ownership of Lot 53–A with notice that the easement could be developed later. The superior court also ruled that "[t]he related motion regarding the status of the Ohio deed seems mooted by this decision." Finally, the superior court ruled that "[t]o the extent that plaintiffs assert trespass to Lot 53–B, they lack standing" because they do not own Lot 53–B.

A bench trial was held on May 15 and 16, 2008. At the conclusion of the trial, the superior court issued an oral decision, ruling that the Davises had proved by clear and convincing evidence that they "adversely possessed" the easement before it was bought by the Hansens. Thus, "there was no longer an easement for [the Hansens] to acquire from Mrs. Riegler, ... making the facts of that transfer, or proposed transfer[,] from Ms. Riegler moot." Finding that the Hansens trespassed on the Davises' property, the superior court awarded the Davises $13,345 in "restoration" damages.

The superior court issued a written decision in July 2008. The superior court clarified that the Davises' adverse use of the easement had the effect of "rendering said easement to be null and void as of 1995."

---

**3.** We point out that easement holders should not engage in such "self-help" remedies where the owner of the servient estate in good faith disputes the validity of the easement. The proper remedy for the holder of a disputed easement that has been blocked is to file a quiet title action to establish the validity of the easement and to seek an injunction requiring the clearing of the easement and damages where appropriate. *See* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 8.3 (2000) ("A servitude may be enforced by any appropriate remedy or combination of remedies, which may include declaratory judgment, compensatory damages, ... [and] injunctions....").

Where the easement is not in dispute, easement holders must still be cautious when clearing the easement themselves. *See Jewell v. Kroo*, 268 Or. 103, 517 P.2d 657, 659 (1973) (en banc) ("The owner of the dominant estate may enter on the servient estate for the purpose of doing anything reasonably necessary to the proper exercise of his easement. Whether the acts of the defendants were reasonably necessary to the exercise of their easement or whether their self-help exceeded these bounds is a question of fact which is dependent upon the circumstances.") (citations omitted).

The superior court entered judgment in the amount of $13,345.00 and awarded the Davises $30,158.85 in attorney's fees.

The Hansens appeal.

## III. STANDARD OF REVIEW

■ We review questions of law de novo, adopting the most persuasive rule of law upon examination of precedent, reason, and policy.[4]

## IV. DISCUSSION

### A. It Was Error To Hold that the Hansens' Easement Was Extinguished by Prescription.

The trial court held that the Davises proved by clear and convincing evidence that they had adversely possessed the easement that Rodgers had reserved when he transferred Lot 53–A to them and that this had the effect of extinguishing the easement as of 1995. The Hansens argue that this holding is erroneous because an easement cannot be extinguished by prescription in Alaska. They argue alternatively that even if an easement can be extinguished by prescription, the prescriptive period in this case would not have run for a sufficient length of time to extinguish the easement.

The Hansens' challenge presents two questions of first impression. First, can an easement be extinguished by prescription in Alaska? And second, if it can, when does the prescriptive period begin to run for adverse use of an easement? We hold that an easement can be extinguished by prescription and that the prescriptive period for adverse use of an easement commences when the conduct

of the servient estate owner unreasonably interferes with the current or prospective use of the easement by the easement holder. Here, the prescriptive period for termination of the Hansens' easement ran, if at all, for less than the requisite ten years. Therefore it was error to hold that the Hansens' easement was extinguished.

### 1. An easement may be extinguished by prescription.

■ Alaska Statutes govern the acquisition of rights in another's property by adverse possession and the *establishment* of an easement by prescription.[5] In both cases, a person must use the land for a period of ten years absent color of title before bringing a claim.[6] But no statute speaks to the questions raised here: whether and to what extent an easement can be *extinguished* by prescription.

The Hansens ask us to hold that easements may never be extinguished by prescription. They cite 2003 legislative amendments curtailing adverse possession in arguing that "[t]ermination of an easement by prescription is contrary to the public policy of the State of Alaska." We find this argument unpersuasive. In amending the statutes governing adverse possession, the Alaska Legislature increased the burden that a litigant bears in proving adverse possession of another's land.[7] But it did not eliminate adverse possession and prescriptive easement claims altogether. We find no support for such a categorical rule allowing easement holders to seek redress for violations of their rights

---

**4.** *Kazan v. Dough Boys, Inc.,* 201 P.3d 508, 513 (Alaska 2009).

**5.** *See* AS 09.10.030(a); AS 09.45.052; *see also McGill v. Wahl,* 839 P.2d 393, 396 (Alaska 1992) (AS 09.10.030 establishes the "method by which a claimant may establish title through adverse possession" and "constitutes a method for establishing an easement through prescription.").

**6.** *Interior Trails Pres. Coal. v. Swope,* 115 P.3d 527, 529–30 (Alaska 2005).

**7.** To prevail under the amended adverse possession law, claimants must now show that they believed in good faith that the disputed land lies within the boundaries of their property in addi-

tion to proving, as they had been required to prove prior to the 2003 legislative amendments, that their use of the land was continuous, open and notorious, exclusive and hostile to the true owners for the statutory period. *Compare* ch. 147, § 3, SLA 2003 (amending Alaska's adverse possession statutes to include the additional requirement that litigants asserting ownership of real property by adverse possession absent color of title have "a good faith but mistaken belief that the real property lies within the boundaries of adjacent real property owned by the adverse claimant"), *with Vezey v. Green,* 35 P.3d 14, 20 (Alaska 2001) (listing the requirements of adverse possession absent color of title under Alaska's adverse possession statutes prior to the 2003 legislative amendments).

in an easement in perpetuity. Instead, we follow the approach adopted by the Restatement (Third) of Property[8] and many jurisdictions[9] and hold that an easement can be extinguished by prescription.

### 2. The prescriptive period begins to run when the use of the easement by the servient estate owner unreasonably interferes with use of the easement by the easement holder.

■ As with a claim that an easement was created by prescription,[10] a party claiming that an easement was extinguished by prescription must prove continuous and open and notorious use of the easement area for a ten-year period by clear and convincing evidence. The more difficult question is what level of activity in the easement area by the servient estate owner is sufficiently adverse and hostile to trigger the prescriptive period. In contrast to a claimant for adverse possession or a prescriptive easement, a party claiming termination of an easement by prescription already has the right to use the area in question. Indeed, so long as the use is consistent with the rights granted in the easement, the owner of a servient estate may make substantial use of the easement area.[11] At what point, then, does use of the easement

area by the owner of the servient estate cross the line from permissible to hostile and adverse so as to trigger the prescriptive period?

■ We hold that the prescriptive period is triggered where the use of the easement "unreasonably interfere[s]" with the current or prospective use of the easement by the easement holder.[12] When satisfied, the various requirements of adverse possession, and similarly prescription,[13] serve to "put [the property owner] on notice of the hostile nature of the possession so that he, the owner, may take steps to vindicate his rights by legal action."[14] Use of the easement that unreasonably interferes with the "easement owner's enjoyment of the easement" is adequate "to give notice that the easement is under threat."[15] Moreover, such extensive use constitutes a "distinct and positive assertion" by the servient estate owner that his or her use of the easement is hostile to the rights of the easement holder and is not merely a permissive use.[16] This rule balances the rights of the servient estate owner to make use of the easement area consistent with the scope of the easement, encouraging productive use of easement areas, with the rights of the easement holder to

---

8. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.7 (2000).

9. *See, e.g., Landgray Assocs. v. 450 Lexington Venture, L.P.,* 788 F.Supp. 776, 785 (S.D.N.Y.1992) (holding that the plaintiff's light and air easement was extinguished by prescription to the extent that the defendant's maintenance of a conveyor structure for the prescriptive period had obstructed the easement); *Faulconer v. Williams,* 327 Or. 381, 964 P.2d 246, 253 (1998) (holding that the plaintiff's adverse use of the easement area for the prescriptive period extinguished the easement across the plaintiff's land); *Norman v. Belcher,* 180 W.Va. 581, 378 S.E.2d 446, 449 (1989) (holding that even if the defendant had acquired an easement by prescription, it was subsequently extinguished by the plaintiffs' use of the easement area for the prescriptive period).

10. *See Interior Trails Pres. Coal.,* 115 P.3d at 530.

11. *See* 7 THOMPSON ON REAL PROPERTY § 60.08(b)(7)(i) (David A. Thomas ed., 2004) ("The servient owner already has the right to use the servient tenement in any way that does not obstruct the easement....").

12. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9; *see also* JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND § 10:25 (2008) ("The general standard [for determining adversity] is that the servient estate owner's conduct must unequivocally and substantially interfere with the easement holder's use of the servitude."). The prescriptive period may also be triggered where the use of the easement violates an express term in the easement, an issue not relevant to the facts of this case.

13. *See McDonald v. Harris,* 978 P.2d 81, 83 (Alaska 1999) ("The elements of a prescriptive easement are essentially the same as the elements of adverse possession, except that adverse possession focuses on possession rather than use." (footnote omitted)).

14. *Peters v. Juneau–Douglas Girl Scout Council,* 519 P.2d 826, 832 (Alaska 1974).

15. 7 THOMPSON ON REAL PROPERTY, *supra* note 11, § 60.08(b)(7)(i).

16. *McDonald,* 978 P.2d at 85 (stating that in the case of prescriptive easement claims, a claimant must overcome the presumption that use of another's property was permissive).

enjoy the benefits of a recorded easement, providing assurance that minor activities in the easement area will not result in the termination of the easement.

 Determining what constitutes unreasonable interference, and thus triggers the prescriptive period, will be heavily fact dependent. Where the easement holder has not used the easement for some time, or at all, the servient estate owner enjoys wide latitude with respect to use of the easement area, and a showing of extensive activity will be required to demonstrate adversity.[17] As a general guideline, temporary improvements to an unused easement area that are easily and cheaply removed will not trigger the prescriptive period; permanent and expensive improvements that are difficult and damaging to remove will trigger the prescriptive period.[18] The burden on the servient estate owner to prove unreasonable interference with an unused easement is high, consistent with the policy of the 2003 legislative amendments that curtailed—but did not abolish—claims of adverse possession.[19]

We decline the Hansens' invitation to adopt as a general rule the even more restrictive test for termination of an unused easement by prescription first set forth in *Castle Associates v. Schwartz*—that use by the owner of a property burdened by an easement is not hostile, even if it might prevent the easement holder from using the easement, until the easement holder has attempted to use the easement or a demand to

use the easement has been refused.[20] While this rule has been adopted in other jurisdictions,[21] we do not find it to be most persuasive in light of precedent, reason, and policy.

Our jurisprudence concerning adverse possession and creation of easements by prescription imposes no analogous requirement that the property owner retake the property or unsuccessfully demand cessation of the claimant's use before the statutory period commences. In fact, any interruption in the claimant's possession or use could instead *toll* the running of the statutory period.[22] Furthermore, such a restrictive rule would allow an easement holder to maintain an easement in perpetuity by simply ignoring all communications from a servient estate owner wishing to purchase a release of an unused easement in order to build permanent improvements on the easement area. The rule we have adopted today best balances the rights of the interested parties.

 In this case, it is undisputed that the easement was unused by an easement holder from its creation until 2007. Beginning in 1985, the Davises built frames for and maintained a garden in the easement area, covering most of the easement by 1987. In 2003 the Davises built a greenhouse within the easement area. As a matter of law, the maintenance of a garden on the easement area did not constitute an improvement sufficiently adverse to commence the prescriptive period.[23] We need not decide whether construction of the greenhouse triggered the

---

17. BRUCE & ELY, *supra* note 12, § 10:25.

18. Of course, an owner of a servient estate makes permanent and expensive improvements to a valid easement area at his or her peril. A servient estate owner is not entitled to unreasonably interfere with use of the easement by the easement holder by making such improvements. *Cf. Kelley v. Matanuska Elec. Ass'n*, Mem. Op. & J. 12488, 2008 WL 4367550, at *7 (Alaska, September 24, 2008) (agreeing that the owner of land burdened by an easement held by a utility company was "entitled to the use of his property as long as it does not unreasonably interfere with [the utility company's] use of its easement" (citations omitted)).

19. *See supra* note 7 and accompanying text.

20. 63 A.D.2d 481, 407 N.Y.S.2d 717, 723 (1978) (applying test where servient estate owner erected fence blocking use of easement).

21. *See, e.g., Sabino Town & Country Estates Ass'n v. Carr*, 186 Ariz. 146, 920 P.2d 26, 30 (App. 1996); *Vandeleigh Indus., LLC v. Storage Partners of Kirkwood, LLC*, 901 A.2d 91, 105–06 (Del. 2006); *Kolouch v. Kramer*, 120 Idaho 65, 813 P.2d 876, 879–80 (1991); *Halverson v. Turner*, 268 Mont. 168, 885 P.2d 1285, 1290 (1994); *City of Edmonds v. Williams*, 54 Wash.App. 632, 774 P.2d 1241, 1244 (1989); *Mueller v. Hoblyn*, 887 P.2d 500, 508–09 (Wyo.1994).

22. *See Swift v. Kniffen*, 706 P.2d 296, 303 (Alaska 1985); *Alaska Nat'l Bank v. Linck*, 559 P.2d 1049, 1052 (Alaska 1977).

23. *See, e.g., Smith v. Muellner*, 283 Conn. 510, 932 A.2d 382, 393 (2007) ("[C]ourts routinely reject that vegetation on an easement, both cultivated and natural, constitutes adverse use adequate to extinguish the easement.").

prescriptive period because ten years have not yet elapsed since it was built. Therefore, we conclude that the Hansens' easement was not extinguished by prescription.

## B. We Decline To Rule on the Quiet Title Question as a Matter of Law.

The Davises urge us to affirm the trial court's decision on an alternative ground, ruling as a matter of law that Riegler never effectively transferred ownership of the easement to the Hansens. The trial court, however, did not address this issue, reasoning that it was mooted by its decision that the easement had been extinguished before the Hansens bought Lot 52. Questions concerning a property's chain of title are often fact-intensive,[24] and the trial court is in the best position to address questions of fact.[25] We therefore decline to decide this issue as a matter of law and remand for a hearing on the quiet title action under AS 09.45.010.[26]

## V. CONCLUSION

The prescriptive period for termination of an easement by adverse use is not triggered until the servient estate owner's use unreasonably interferes with use of the easement by the easement holder. Assuming that Riegler effectively transferred ownership of the easement to the Hansens, the prescriptive period in this case did not commence until 2003 at the earliest and this precludes the Davises from satisfying the ten-year adverse use requirement for extinguishing an easement by prescription. We therefore REVERSE the superior court's decision that easement was extinguished by adverse use and REMAND for an evidentiary hearing on the easement's chain of title.[27]

---

**24.** *See, e.g., Capener v. Tanadgusix Corp.,* 884 P.2d 1060, 1074 (Alaska 1994) (holding that genuine issues of material fact precluded summary judgment in a quiet title action involving an occupier of land that had been conveyed to a corporation under the Alaska Native Claims Settlement Act); *Wickwire v. McFadden,* 576 P.2d 986, 987 (Alaska 1978) (reversing a summary judgment order in an action to quiet title to a lot in a subdivision because there was a genuine issue of material fact concerning whether the seller could convey good title to the buyer in a timely manner).

**25.** *See Kirby v. State,* 649 P.2d 963, 970 (Alaska App.1982) ("[T]he trial court is in a better position than is this court to rule upon the factual aspects of the case ...."); *see also Veselsky v. Veselsky,* 113 P.3d 629, 634 n. 16 (Alaska 2005) ("We have held that the trial court, not this court, is in the best position to judge witnesses' credibility and evaluate their testimony.").

**26.** In hearing the quiet title action on remand, it may be wise to include all parties, including third parties such as Riegler, who have had or may have an interest in the easement across Lot 53–A. On remand, the Davises' allegation of trespass to their neighbor's property is not an issue. Although we have broadly interpreted the concept of standing in favor of increasing acces-

sibility to the courts, a litigant is still required to have a "sufficient personal stake in the outcome of the controversy" to have standing to sue. *Hoblit v. Comm'r of Natural Res.,* 678 P.2d 1337, 1340 (Alaska 1984); *Moore v. State,* 553 P.2d 8, 23 (Alaska 1976). The purpose of requiring a personal stake is to guarantee that there is adversity, "which is fundamental to judicial proceedings." *Hoblit,* 678 P.2d at 1340. Here, the Boehlerts own Lot 53–B, and they are the ones directly affected by the Hansens using their land to access Lot 52. To achieve the necessary adversity for a trespass action for Lot 53–B, the Boehlerts are the proper plaintiffs to bring this claim. Thus, we affirm the trial court's decision that "[t]o the extent that [the Davises] assert trespass to Lot 53–B, they lack standing because it is not a cause of action accruing to [them], and this court is without jurisdiction to adjudicate the rights of the Boehlerts, parties not before it."

**27.** Our disposition requires us to vacate the superior court's award of damages and attorney's fees to the Davises, which makes it unnecessary to consider the Hansens' argument that the attorney's fee award should be reduced. *See Holta v. Certified Fin. Servs., Inc.,* 49 P.3d 1104, 1111 n. 22 (Alaska 2002) (noting that consideration of the sufficiency of the attorney's fee award is unnecessary because the decision to reverse the judgment on its merits requires that the award be vacated).