*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JIGLIOTTI FAMILY TRUST, ) | |
| ) | Supreme Court No. S-17614 |
| Appellant, ) | |
| ) | Superior Court No. 3PA-12-02262 CI |
| v. ) | |
| ) | O P I N I O N |
| DONALD EDWARD BLOOM, ) | |
| DEBORAH JANE BLOOM, and ) | No. 7562 – October 29, 2021 |
| JOHN W. MOORE, ) | |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Patricia R. Hefferan, Wasilla, for Appellant. Donald Edward Bloom, Deborah Jane Bloom, and John W. Moore, pro se, Willow, Appellees.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

A family trust owns property reachable by an access road that follows an easement across others' properties. A neighboring couple objected to the trust's use of the easement. They contended that the easement grant was invalid and that, if valid, it had been extinguished because of the trust's failure to insist on its right to use it over the

course of several decades, during which time the couple had built a house on the easement and made other use of the area. The trust filed a quiet title action. The superior court decided on summary judgment that the easement was valid; following trial, however, it found that the trust's action was barred by laches and, alternatively, that the easement had been extinguished by prescription where it met the neighboring couple's house. The trust appeals.

The superior court's conclusion that the easement was partially extinguished by prescription is supported by its findings of fact, which are not clearly erroneous, and we therefore affirm its decision on that ground. But because the parties are entitled to a final judgment quieting title in accordance with the court's rulings as affirmed on this appeal, we remand the case for that purpose.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

The primary issue in this case is whether the Jigliotti Family Trust has an easement by which it can access its property through land owned by Deborah and Donald Bloom. The easement at issue — which we also refer to as the access road — begins at Willow Fishhook Road and crosses parcels owned by John W. Moore and the Matanuska-Susitna Borough before reaching the Blooms' property, then terminates in land now owned by the Trust.

The Trust's property was formerly owned by Henry Jones; the Blooms' property was formerly owned by Joseph Reid. In 1966 Jones and Reid entered into an agreement entitled "License To Construct, Maintain, Use And Enjoy An Access Highway Over The Land Of The Licensor." The license allowed Jones to construct "a highway" over Reid's property, to "be laid out and planned by the mutual agreement

between the parties." The license also provided that if Reid ever sold his land, the sale would be "subject to this license."[1]

The Blooms purchased Reid's property in 1994. An existing cabin was situated about 15 feet from the access road. The Blooms began repairing the cabin and in July 1994 moved in. At that time, according to Donald Bloom, the access road was mostly "impassable" for all but three months of the year, and they had to "pack [their provisions] in by hand" or all-terrain vehicle. They eventually upgraded the access road "to [their] front door," but past their buildings — where the access road continued into what was to become the Trust property — it remained muddy and usually impassable.

John Jigliotti, the settlor of the Trust, purchased Jones's property in the early 1970s. He held the property as an investment; Jigliotti family members never lived there and rarely visited. The superior court found that the first encounter between the Jigliottis and the Blooms occurred in the summer of 1994 or 1995. John Jigliotti's daughters, Carol and Joey, along with Joey's husband, Scott Henderson, attempted to reach the Jigliotti property via the access road. When they reached the Blooms' property, the Blooms told them they could not go through "and that if they wanted to build a road they could do so on the section-line easement" that bordered the Blooms' property to the west. The Blooms did, however, allow the party to park their car next to the cabin before following a powerline easement to the Jigliotti property.

---

[1] The Trust presented a witness at trial with expertise in interpreting historical geophysical data from aerial surveys, who testified that the access road preexisted the 1966 license by at least five years. Another expert witness, a land surveyor, testified that it was not unusual for parties to enter into an easement agreement to validate an already existing access route; he appeared to assume that this was Jones's and Reid's purpose in entering into the license.

In 1996 the Blooms began building a new home directly on the access road;[2] the house was completed in late 1997. The superior court found that the Jigliottis visited the property again in the late 1990s and saw the house in the roadway. When the Jigliottis stopped their car, the Blooms "confronted" them. "The Jigliottis explained that they were the neighbors trying to get to their property," and that although Donald Bloom "was not happy about the intrusion," he "permitted the Jigliottis to continue on foot along the access road in order to get to their property."

John Jigliotti created the Jigliotti Family Trust in 2007, named Carol and Joey as the beneficiaries, and quitclaimed the property to the Trust. He appointed Henderson, Joey's husband, as trustee.

Members of the Jigliotti family visited the Trust property again in 2011 with a real estate agent and a potential buyer. They walked into the property along the section-line easement and left via the access road. As they were leaving they met Deborah Bloom, who wanted to know what they were doing on her property. According to Joey, Henderson talked to Deborah "to kind of ease the situation," and Deborah let the group pass through.

Later that summer the Jigliottis commissioned a surveyor to visit the Trust property in preparation for a sale. The Jigliottis assert that the Blooms turned the surveyor away. A second surveyor, Paul Pilch, testified that he showed a couple the Jigliotti property in 2012. He testified that he drove along the access road to where the Bloom property began, then hiked in along the section-line easement. Henderson testified that he visited the property in 2015 with a third surveyor; they walked in along the section-line easement and left by the access road.

---

[2]    The superior court observed in its post-trial findings of fact that "[t]he only credible evidence presented as to the position of the Blooms' house was the Blooms' testimony and [Donald] Bloom's drawing" submitted as an exhibit.

At trial the Blooms testified they did not know about the 1966 license between Reid and Jones and that since 1995 they had consistently objected to the Jigliottis, or anyone else, using the access road without their permission. They testified about building their home on the access road and installing water, gray water, and sewer lines beneath the roadway. They kept two "aggressive, territorial" dogs loose on their property; Pilch, the surveyor, testified that the dogs gave him a "bark signal" that made him "cautious" about getting out of his car at the time of his 2012 visit.

## B. Proceedings

In October 2012 the Trust filed a complaint against Moore, the Blooms, and the Borough seeking to quiet title to the access road.[3] The court addressed the validity of the 1966 license on cross-motions for summary judgment. The court rejected arguments by Moore and the Blooms that the license was void as "against public policy and the legislative intent of the homestead patents." It confirmed the license's validity, deciding that it "created an easement appurtenant through the defendants' land for ingress and egress to the Jigliotti property."

The court held a three-day bench trial in September 2018 to determine the route of the access road and the extent to which the Blooms' conduct had extinguished the Jigliottis' right to use it.[4] The Trust presented the testimony of two experts who

---

[3] The Trust dismissed its claim against the Borough after concluding that the Borough would likely approve an easement over its property without litigation.

[4] The parties framed the issues differently. In its opening statement, the Trust said it was seeking a court order establishing the existence and location of the access road so that "there's no controversy about where it is, [and] the Jigliotti property can be marketed." Deborah Bloom described the issues as (1) whether the 1966 license was valid (though that had already been decided on summary judgment); (2) whether the Jigliottis "waited too long to bring [the license] forward"; and (3) whether the Blooms could "show that through prescriptive easement [they] have extinguished that easement

(continued...)

discussed the history and location of the access road, as well as the testimony of Henderson, Carol and Joey Jigliotti, and Moore. The Blooms, representing themselves at trial, both testified; they also presented the testimony of the Jigliottis' surveyor, Pilch, and Donald's brother, Robert.

In written findings of fact and conclusions of law, the court found in favor of the Blooms, primarily on laches grounds.[5] The court found that the Blooms' interference with the Jigliottis' use of the easement was the paradigm of "open, continuous, notorious, hostile and adverse use" sufficient to show adversity to the easement holder's interests. The court found that the Blooms told the Jigliottis and Henderson in 1994 or 1995 that the access road did not continue through to the Jigliottis' property; that the Blooms "consistently confronted" visitors attempting to use the road, including the Jigliottis, whom they perceived to be trespassers; and that in 1997 the Blooms constructed their house and outbuildings on and around the access road. The court found that the Jigliottis, in contrast, "did not actively assert their rights to the easement" even when faced with these events, instead presenting themselves "as neighbors exploring surrounding land and attempting to access their property" while acceding to the Blooms' instructions as to where they were allowed to walk.

The court found that "[a] reasonable person would have been galvanized into action the first time [the Blooms] denied access to the easement and asserted that

---

[4]    (...continued)
by building [their] home and [their] outbuildings and everything else in the middle of that access."

[5]    "Laches is an equitable defense available 'when a party delays asserting a claim for an unconscionable period. To bar a claim under laches, a court must find both an unreasonable delay in seeking relief and resulting prejudice to the defendant.' " *Burke v. Maka*, 296 P.3d 976, 979 (Alaska 2013) (quoting *Whittle v. Weber*, 243 P.3d 208, 217 (Alaska 2010)).

there was no easement," and that by 1994 or 1995 the Jigliottis had notice of a controversy sufficient to prompt a reasonable person to file a quiet title action. Yet it was "approximately fifteen years" later that the Trust filed suit. In the meantime, the Blooms had built their house on the access road and made other permanent uses of the property that interfered with travel along the easement. The court thus determined that the Trust's claim was barred by laches.

The court found "[a]dditionally and alternatively" that the Blooms had "partially extinguished the access road easement through prescription . . . by building their home, out buildings, and . . . other improvements on the easement." The court found that although the easement continued to exist "through the Moore property and through part of the Bloom property," it was extinguished once it reached the "[t]he cleared portion of the Blooms' property . . . not . . . less than 25 feet from their house."

Finally, the court addressed the Trust's alternative claim that it was entitled to an easement by necessity because it could not make use of its land without an access road.[6] The court found that the Trust had not yet "attempted to obtain the wetlands permit necessary to begin constructing a road" along the section-line easement, which would "provide[] an alternative route for ingress and egress"; the court concluded,

---

[6]    An easement by necessity "may arise where an owner of land conveys to another an inner portion which is entirely surrounded by lands owned by the conveyor or by the conveyor and another. In such a situation a right of access across the retained land of the conveyor is normally found, based upon public policy which is favorable to full utilization of land and [the] presumption that parties do not intend to render land unfit for occupancy." *Freightways Terminal Co. v. Indus. & Com. Constr., Inc.*, 381 P.2d 977, 984 n.16 (Alaska 1963). An easement by necessity ceases to exist when it is no longer necessary. *Id.*

therefore, that the Trust's claim "that the access road should be enforced based on necessity [was] premature" and dismissed it without prejudice.

The Trust appeals.

## III.   STANDARD OF REVIEW

"Whether an easement was extinguished by prescription presents issues of both law and fact."[7]  "We do not disturb a trial court's findings of fact unless they are clearly erroneous.  We review the application of law to facts de novo."[8]

"Whether principles of finality apply to a judgment is a question of law that we review de novo."[9]

## IV.   DISCUSSION

The Trust contends that the superior court erred by relying on the laches doctrine because the Blooms did not raise it as a defense and neither party explicitly addressed the doctrine in their pleadings or at trial.  We do not need to decide whether this was error, because we can affirm the court's judgment on the basis of its alternative ruling:  that the easement was extinguished by prescription at a point short of the Blooms' house.

### A.   The Superior Court Did Not Clearly Err By Concluding That The Access Road Easement Was Partially Extinguished By Prescription.

In Alaska, the creation of an easement by prescription[10] is governed by

---

[7]   *Reeves v. Godspeed Props., LLC*, 426 P.3d 845, 849 (Alaska 2018).

[8]   *Id.* (quoting *HP Ltd. P'ship v. Kenai River Airpark, LLC*, 270 P.3d 719, 726 (Alaska 2012)).

[9]   *State, Child Support Enf't Div. v. Bromley*, 987 P.2d 183, 192 (Alaska 1999).

[10]   Relevant definitions of "prescription" include "[t]he effect of the lapse of
(continued...)

statute.[11]  In common law, easements may be not only created but also extinguished by prescription; we adopted this rule in *Hansen v. Davis*, following "the approach adopted by the Restatement (Third) of Property and many jurisdictions."[12]  Under this approach, "a party claiming that an easement was extinguished by prescription must prove continuous and open and notorious use of the easement area for a ten year period by clear and convincing evidence."[13]

The prescriptive period begins when the landowner's use of the easement unreasonably interferes with the easement holder's current or prospective use of it;[14] such unreasonable interference should put easement holders "on notice of the hostile nature of the possession so that [they] may take steps to vindicate [their] rights by legal action."[15]  The landowner's use of the easement area must be "extensive," sufficient to demonstrate the landowner's " 'distinct and positive assertion' . . . that [its] use of the

---

[10]    (...continued)
time in creating and destroying rights" and, more specifically, "[t]he extinction of a title or right by failure to claim or exercise it over a large period."  *Prescription*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.16 cmt. a, g (AM. LAW INST. 2000) (defining "prescription" as process by which "a person begins using property without the consent or authority of the owner and acquires a servitude" by satisfying certain conditions, including that the use be open, notorious, and continuous "for the prescriptive period").

[11]    *Hansen v. Davis*, 220 P.3d 911, 915 (Alaska 2009) (citing AS 09.10.030(a); AS 09.45.052).

[12]    *Id.* at 916 (footnote omitted).

[13]    *Id.*

[14]    *Id.*

[15]    *Id.* (quoting *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826, 832 (Alaska 1974)).

easement is hostile to the rights of the easement holder and is not merely a permissive use."[16]

"Determining what constitutes unreasonable interference, and thus triggers the prescriptive period, [is] heavily fact dependent."[17] If the easement holder does not often use it, as in this case, the landowner "enjoys wide latitude with respect to use of the easement area, and a showing of extensive activity will be required to demonstrate adversity."[18] "As a general guideline, temporary improvements to an unused easement area that are easily and cheaply removed will not trigger the prescriptive period; permanent and expensive improvements that are difficult and damaging to remove will trigger the prescriptive period."[19]

The Trust contends that the court erred in several ways when finding that the easement was partially extinguished by prescription. First, the Trust challenges the superior court's finding that "although the Blooms had *constructive* notice of the License, they did not have *actual* notice of the easement." (Emphasis in original.) The Trust cites testimony that the road remained visible in aerial photos all the way to the Trust's property and that it had been walked as recently as 2012. However, the superior court credited the Blooms' testimony that they subjectively believed there was no easement and that they asserted control over the easement area in good faith. Because these findings turn on witness credibility, we defer to the superior court's judgment.[20]

---

[16]     *Id.* (quoting *McDonald v. Harris*, 978 P.2d 81, 85 (Alaska 1999)).

[17]     *Id.* at 917.

[18]     *Id.*

[19]     *Id.*

[20]     *Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 20 P.3d
(continued...)

The Trust next argues that "there was no dispute shown in the record that there was disagreement about using the access road" before their suit was filed, citing Henderson's testimony that the Jigliottis used the road several times and Deborah's testimony that the Blooms did not prevent that use. But the court found that although the Jigliottis did use the access road on occasion, it was only when they used it with the Blooms' permission that their use was tolerated. The court found specifically that the Blooms "confronted" the Jigliottis and others when they sought to enter via the access road; that the Blooms informed the Jigliottis that there was no easement except along the section line; that the Jigliottis were not allowed to drive their vehicles through the Blooms' property; and that in 1997, 15 years before suit was filed, the Blooms constructed their house and other improvements directly in what the Jigliottis claimed to be the roadway. If there was no "disagreement" over use of the access road prior to 2012, it was only because the Blooms consistently asserted their authority over it and the Jigliottis consistently yielded to that authority. And to the extent the Jigliottis *were* claiming a right of way through the Blooms' property, the evidence supported a finding that the Blooms strongly disagreed, believing that it was up to them to decide whether to permit the Jigliottis' use.[21] The court's findings on this issue are not clearly erroneous.

The Trust next contends that the easement cannot have been extinguished by prescription because the evidence showed that the road was not totally obstructed by the Blooms' improvements. They cite Carol's and Joey's testimony that the Jigliottis

---

[20]      (...continued)
1130, 1136-37 (Alaska 2001) (observing that we "consistently grant[] deference to trial courts where credibility is at issue").

[21]      A permitted use is not hostile to the rights of the party that permits it. *See Hansen*, 220 P.3d at 916 (noting that prescriptive extinguishment requires that landowner's use of property "is hostile to the rights of the easement holder and is not merely a permissive use").

were able to skirt around the Blooms' house without straying from what they believed to be the access road. They also cite Donald's, Deborah's, and Robert's testimony that although the Blooms' water, sewer, and electrical lines ran under the road and would not stand up to heavy traffic, the house itself was three feet from the roadway.

However, the court found that the Blooms "buil[t] their home on the access road." As noted above, the court found that there was little evidence of the house's exact placement; it relied for its finding on the Blooms' testimony and Donald's drawing on a map used as an exhibit. Although the testimony was imprecise, the court made other pertinent findings about the Blooms' use of their property. It found that the Blooms had "made a new road to access their backyard," implying that this was how visitors were able to circumvent the house. It referenced "a garden and pigpen" that had been there at the time of the Jigliottis' 1994 or 1995 visit. It noted that the property contained unidentified "outbuildings," "a shop [built] along the access road," and cleared land "around the access road to accommodate [Donald] Bloom parking equipment and vehicles on the property." The court also found that "the Blooms consistently enforced exclusive use of the cleared portion of the access road next to their cabin and their house." When deciding where the access road should be deemed extinguished, the court found that 25 feet from the house would give the Blooms "a reasonable area around their house that shall be considered a driveway," with the easement ending at the driveway's edge.[22]

---

[22]     *Cf. Hakala v. Atxam Corp.*, 753 P.2d 1144, 1145, 1149 (Alaska 1988) (following land exchange, requiring Native corporation to reconvey cabin to hunting guide who had historically used it as base camp and remanding "to the trial court to determine the size of the curtilage; that is, a reasonable area surrounding the cabin which [the guide] needs so that he can use the cabin as his own"); *Dudley v. Neteler*, 924 N.E.2d 1023, 1025, 1029 (Ill. App. 2009) (in quiet title action involving claimed
(continued...)

In *Hansen* we decided as a matter of law that "the maintenance of a garden on the easement area did not constitute an improvement sufficiently adverse to commence the prescriptive period."[23] We cited this conclusion in *Reeves v. Godspeed Properties, LLC*, when we addressed whether gold-mining activity in a roadway easement was sufficiently adverse to the easement holder's rights to begin the prescriptive period; we concluded that parked "cars, equipment, and gravel piles" were sufficiently moveable that, like the garden in *Hansen*, they did not demonstrate the required adversity.[24]

Some of what the Blooms maintained in the area of the easement — the garden, the pigpen, and the parked vehicles — appear to be similarly movable. If that were the extent of the Blooms' occupation of the easement area, this case would be indistinguishable from *Reeves*, as the Trust argues. But given the superior court's findings about the house, the shop, and the rerouted access to the Blooms' backyard, we cannot say that its finding that the Blooms "buil[t] their home on the access road" and thus blocked it off entirely is clearly erroneous.

We conclude, therefore, that the superior court did not clearly err in its findings of fact. These findings support its conclusion that the easement to the access road was extinguished by prescription at the edge of the Blooms' driveway, and we therefore affirm the court's decision.

---

**22** (...continued)
easement for house straddling property line, remanding "for the trial court to conduct an evidentiary hearing to determine the extent of the curtilage, if any, that existed as a part of the conveyed easement based upon the established and necessary usage historically established by the grantor's use").

**23** 220 P.3d at 917.

**24** 426 P.3d 845, 847, 854 (Alaska 2018).

**B.    The Parties Are Entitled To A Final Judgment Quieting Title.**

The Trust also contends that it is entitled to a judgment, consistent with Alaska Civil Rule 58, addressing the legality of the 1966 license and the validity of the easement up to the point on the Blooms' property where it is extinguished by prescription.  We agree.

As explained above, the court determined the validity of the 1966 easement on summary judgment, then, following trial, entered extensive findings of fact and conclusions of law that addressed the remaining issues in the case.  The court's findings and conclusions ended with the sentence, "IT IS HEREBY ORDERED that this case is DISMISSED."  Rule 58, however, requires that "[e]very judgment must be set forth on a separate document distinct from any findings of fact, conclusions of law, opinion, or memorandum."  The Trust submitted a timely motion for reconsideration asking, among other things, that it be allowed to submit form judgments "to confirm the jeep trail access through the MOORE property."[25]  The court invited a response from the Blooms and Moore, but although the court later denied those parties' motion to amend the findings and conclusions, the record contains no final judgment.

The parties are entitled to a judgment quieting title in accordance with the superior court's rulings on summary judgment and following trial as affirmed in this opinion.  We remand this case to the superior court for that purpose.

---

[25]    The Trust also asked for relief that plainly required reconsideration of the superior court's findings and conclusions, including that the court enter judgment "to confirm the jeep trail access through the BLOOM property allowing the court's reasonable buffer for [the Blooms'] home."

## V. CONCLUSION

We AFFIRM the superior court's decision that the access road was extinguished by prescription 25 feet from the Blooms' house. The case is remanded for entry of a final judgment quieting title.