Harold M. COWAN and Ellen Jane Cowan, Appellants,

v.

Sharon YEISLEY, Gerald Byron, Cherryle Byron, Ketchikan Gateway Borough, and all other persons or unknown parties claiming a right, title, estate, lien, or other interest in the real estate described in the Complaint in this action, hereby designated as John Does, Appellees.

No. S–13380.

Supreme Court of Alaska.

May 27, 2011.

Michael P. Heiser, Ketchikan, for Appellants.

Scott A. Brandt–Erichsen, Borough Attorney, Ketchikan, for Appellee Ketchikan Gateway Borough, and H. Clay Keene and Blake M. Chupka, Keene & Currall, P.C., Ketchikan, for Appellee Sharon Yeisley.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

In 1948 Claude Yeisley received a patent to Tract A, consisting of 4.45 acres of land in Ketchikan, from the United States. In 1956 he deeded a lot of land within Tract A to his daughter and her husband, the Cowans, along with a "perpetual right of way running with the land" over a 30–foot strip of "right of way" running along the southeastern side of Tract A. Between 1960 and 1973, Claude Yeisley conveyed most of the remainder of Tract A to his son and daughter-in-law, James and Sharon Yeisley. None of the deeds issued between 1960 and 1973 mentioned the right of way. In 1980 James Yeisley applied for a subdivision of all of Tract A with the exception of the Cowans' land. The plat showed the right of way; it was approved and recorded. The property was resubdivided in 1981, and the new plat also showed the right of way. By marking the right of way, the two plats had the effect of dedicating the right of way to the Ketchikan Gateway Borough.

In 2006 the Cowans filed suit against the Borough, Sharon Yeisley, and other parties, requesting quiet title to the right of way. They argued that the 1956 deed conveyed it to them, or, in the alternative, that they had obtained title through adverse possession. All parties filed motions for summary judgment. The superior court ruled that the 1956 deed did not convey the disputed land to the Cowans, and denied summary judgment on the adverse possession claim. On the first day of

trial, the superior court ruled that it would apply the then-current adverse possession statute (amended in 2003) instead of the statute in effect in 1980. The court found that the 2003 statute foreclosed the Cowans' claims and entered judgment in the defendants' favor. The Cowans appeal the superior court's rulings on the 1956 deed, the adverse possession claim, and other claims.

Because we find that it was error to apply the 2003 adverse possession statute and because the Cowans raised a genuine issue of material fact as to whether they adversely possessed the disputed land under the pre-2003 adverse possession statute, we remand for further proceedings on the adverse possession claim.

## II. FACTS AND PROCEEDINGS

### A. Land Grant And Conveyance

On April 5, 1948, the United States issued a patent granting Claude Yeisley title to Tract A, consisting of 4.45 acres of land in Ketchikan.[1] In 1953 Harold and Ellen Cowan built a house on a portion of Tract A with Claude's permission. Claude also commissioned Milford Page to prepare a plat of Lot 1, the portion of Tract A on which the Cowans had built their house. The Page plat showed a 30–foot wide "R.O.W.," or "right-of-way," at the southeastern boundary of Tract A, but it was never recorded.

In July 1956 Claude executed and recorded a warranty deed (1956 deed) conveying Lot 1 to the Cowans. The legal description of Lot 1 in the 1956 deed matched the description on the Page plat. The 1956 deed also granted the Cowans "[a] perpetual right of way running with the land over the 30 foot strip of right of way, which right of way abuts the southeasternly sideline of . . . Tract A."

In 1960 and 1963 Claude executed warranty deeds conveying Lots 2–4 of Tract A to James and Maxine Smith (the Smiths). In 1963 Claude executed and recorded another warranty deed (1963 deed) conveying a lot of land adjacent to the southeastern boundary of Tract A to the Cowans.

In 1971 Claude executed and recorded a warranty deed (1971 deed) conveying Lot 5 of Tract A to his son and daughter-in-law, James and Sharon Yeisley. In 1973 Claude executed and recorded another warranty deed (1973 deed) conveying a large portion of Tract A to James and Sharon.

None of the above deeds explicitly conveyed the 30–foot strip of land (the disputed land) first referred to in the Page plat as a "R.O.W." The sole reference to the disputed land in any of the deeds is the grant of a "perpetual right of way running with the land" in the 1956 deed to the Cowans.

### B. Subdivision Of Tract A And Dedication Of Disputed Land To Borough

In 1979 James Yeisley commissioned a subdivision survey as part of a subdivision application he had filed with the Ketchikan Gateway Borough (Borough). In February 1980 the Zoning Administrator for the Borough recommended that the Planning Commission approve the commissioned survey as a plat of the land. In the recommendation, "the right-of-way shown on the proposal"—the disputed land—was "confirmed as existing."

During a hearing before the Planning Commission, Harold Cowan objected to the preliminary plat and stated that "he [had] a 30 foot right-of-way and the lower lines [of the commissioned survey] don't show this." The Planning Commission approved the plat with the condition that the final plat note a 30–foot right of way. In March 1980 the Borough recorded a modified version of the 1979 survey as final plat 80–9. The certificate of ownership on plat 80–9 was signed only by the Yeisleys; the Cowans did not sign the plat.

In May 1980 Ellen Cowan wrote a letter to the Borough stating that she was "holding a deed to [the] existing 30 ft right of way" and that she had "no intention of opening up this right of way to anyone." In 1981 there was an additional resubdivision of Tract A. A new plat was recorded as plat 81–40, and only the Yeisleys signed the certificate of ownership.

1. *See* Appendix for an illustration of Tract A.

## C. Later Developments On Tract A

After acquiring the land in the 1963 deed, the Cowans built a driveway connecting their home on Lot 1 to the road that ran across part of the disputed land. Ellen Cowan affied that the Cowans used the "remainder of the thirty-foot (30') right-of-way ... in the same manner as the rest of [their] property—as an area for the children to play, to grow flowers, to park cars, etc." In addition, Ellen Cowan affied that Sharon Yeisley attempted to use the disputed land twice, but that she stopped when the Cowans "advised her she was trespassing." Ellen also affied that the Cowans saw "various surveyors" on their property from 1979 to 1981 and that they would ask the surveyors to leave or "chase them off."

In 1986 the Cowans brought suit for quiet title after Sharon Yeisley hired contractors to build on the disputed land in 1984. Sharon did not follow through on her plans to develop the land, and the Cowans' lawsuit was dismissed for lack of prosecution.

In January 2006 Sharon Yeisley conveyed a portion of her property to Gerald and Cherryle Byron (the Byrons).

## D. Trial Court Proceedings

In July 2006 the Cowans again filed suit against Sharon Yeisley, the Byrons, and the Borough. The Cowans sought quiet title to the disputed land, claiming that they were its owners through the 1956 deed or through adverse possession, and that plats 80–9 and 81–40 were invalid because, as the owners of Lot 1 with an interest in the disputed land, their signatures were required for a valid plat. They also raised trespass claims against Sharon Yeisley and the Byrons, and claimed that the Byrons had interfered with their water rights. In response, Sharon and the Byrons filed several counterclaims and cross-claims.

In November 2006 the Borough filed a motion for partial summary judgment on the Cowans' quiet title claim to the disputed land. The Borough argued, in part, that the Cowans' claim was barred by waiver, estop-

pel, and laches, and that the Borough was entitled to clear title because the land was validly dedicated to the public in plats 80–9 and 81–40.

In January 2007 Sharon Yeisley filed a motion for summary judgment on the Cowans' quiet title and trespass claims. She argued that the 1956 deed only conveyed an easement interest to the Cowans, that the Cowans did not obtain title to the disputed land through adverse possession, and that the Borough was the fee simple owner. The Cowans argued in response that there was a genuine issue of material fact whether they had adversely possessed the disputed land, and that Sharon's claims were barred by waiver, estoppel, and laches.

In March 2007 the Cowans filed a motion for summary judgment on all of their claims, and the Byrons filed a motion for summary judgment on the Cowans' quiet title, trespass, and water rights claims.

On April 23, 2007, the superior court issued an "Omnibus Order" on all the parties' motions for summary judgment. The court denied the Byrons' motion for summary judgment on the issues of trespass and water contamination. It held that the 1956 deed did not grant the Cowans a fee interest in the disputed land, and that Sharon's claims were not barred by waiver, laches, or estoppel. It also held that the Cowans' ownership of Lot 1 did not render plats 80–9 and 81–40 invalid, but that the plats might be invalid if the Cowans had obtained fee title to the disputed land through adverse possession before the 1980 dedication. The court then held that the Cowans had raised a genuine issue of material fact on whether their possession of the disputed land was "hostile" and whether it had ripened into title before dedication. It therefore denied summary judgment on the adverse possession claim.

On July 1, 2008, the parties came before the superior court for trial. On the first day of trial, the court ruled that the "modern test," or post–2003 adverse possession law, applied.[2] The court held that the Cowans

---

**2.** In 2003 the Legislature changed the adverse possession statute to eliminate adverse posses-

sion where the claimant does not have color of title or a good faith (but mistaken) belief that the

could not, as a matter of law, fulfill current AS 09.45.052 requirements that they either have color of title or a "good faith but mistaken belief" that the disputed land was within the boundaries of their property; the court entered judgment in the Borough's favor on the quiet title claim. Because the Cowans did not have an ownership interest in the disputed land, the court's ruling also mooted the trespass claims, and the Cowans voluntarily dismissed their water rights claim against the Byrons.

The court awarded Sharon $58,673.32, representing a mixture of attorney's fees under Alaska Civil Rules 82(b)(2) and 68(b). It also awarded the Borough $1,985.96 in attorney's fees under Rule 82, and awarded the Byrons $12,137.25, representing a mixture of attorney's fees under Rules 82 and 68.

The Cowans appeal.

## III. STANDARD OF REVIEW

■ When reviewing a grant of summary judgment, we "must determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts."[3] "All reasonable inferences of fact from proffered materials must be drawn against the moving party and in favor of the non-moving party."[4]

■ Questions of statutory construction,[5] whether a deed is ambiguous,[6] and the interpretation of rules and statutes govern-

ing attorney's fees[7] are questions of law, which we review de novo.

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Ruling That The Cowans Did Not Have An Express Fee Interest In The Disputed Land.

The Cowans argue that the superior court erred in ruling that the 1956 deed granted the Cowans an easement rather than a fee interest in the disputed land. Specifically, they argue that Claude Yeisley must have intended for them to be the sole owners of the land because he never deeded an interest in the disputed land to anyone else,[8] and that it would be "illogical to conclude that Claude Yeisley kept the strip of land for himself after conveying the balance of Tract A."

[5] We conclude that the 1956 deed unambiguously grants the Cowans an easement, not a fee interest.

[6] We have held that the "first step in deed construction is to look to the four corners of the document to see if it unambiguously presents the parties' intent."[9] Only if the deed is ambiguous does this court proceed to the next step, which is "a consideration of the facts and circumstances surrounding the conveyance."[10] "If the words of the deed taken as a whole are capable of but one reasonable interpretation, a court need go no further."[11]

---

land was in their property. AS 09.45.052; Ch. 147, § 3, SLA 2003; *see also Hansen v. Davis,* 220 P.3d 911, 916 n. 7 (Alaska 2009).

**3.** *Wright v. State,* 824 P.2d 718, 720 (Alaska 1992) (citing *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985)).

**4.** *Id.*

**5.** *State v. Strane,* 61 P.3d 1284, 1286 n. 4 (Alaska 2003) (citing *Todd v. State,* 917 P.2d 674, 677 (Alaska 1996)).

**6.** *Dias v. State, Dept. of Transp. & Pub. Facilities,* 240 P.3d 272, 274 (Alaska 2010) (citing *Estate of Smith v. Spinelli,* 216 P.3d 524, 529 (Alaska 2009)).

**7.** *Lakloey v. Ballek,* 211 P.3d 662, 664–65 (Alaska 2009).

**8.** The Cowans argue that Claude did not deed the disputed land when he deeded the rest of Tract A to Sharon and James in the 1971 and 1973 deeds. They further argue that Sharon did not have an easement by implication or an easement by necessity to the disputed land. Finally, they argue that Claude could not have impliedly dedicated the land to the Borough as a public right of way.

**9.** *Norken Corp. v. McGahan,* 823 P.2d 622, 626 (Alaska 1991).

**10.** *Id.*

**11.** *Id.* (citing *Knadler v. Adams,* 661 P.2d 1052, 1053 (Wyo.1983)).

[7]   The 1956 deed granted to the Cowans a "perpetual right of way running with the land over the 30 foot strip of right of way." As the superior court noted, we have held that "[t]he general rule is that the term 'right of way' is synonymous with 'easement.' " [12] We have described a right of way as "primarily a privilege to pass over another's land," [13] and we have consistently used the phrase "right of way" to refer to strips of land used for passage of people or things.[14] Other courts have also held that unless the parties make it clear that a fee interest is intended, a grant of a "right of way" conveys an easement interest.[15] Thus, on its face, the deed grants to the Cowans an easement, not a fee interest.[16]

■   Because Claude Yeisley did not convey a fee interest in the 30–foot right of way to anyone, we conclude that Claude owned the 30–foot right of way outright, and that Plat 80–9's notation of the 30–foot right of way in the subdivision had the legal effect of dedicating the disputed land to the public,[17] unless the Cowans can demonstrate that they adversely possessed the strip of land under the pre–2003 statute.[18]

## B.   It Was Error To Grant Summary Judgment On The Cowans' Adverse Possession Claim.

Prior to 2003, Alaska had two adverse possession statutes. Under former AS 09.45.052(a), claimants with color of title could establish adverse possession by showing that their use of the land was continuous, open and notorious, exclusive, and hostile to the true owners of the land for seven years.[19] Under former AS 09.10.030, claimants without color of title claiming adverse possession had to fulfill the same requirements for ten years.[20]

■   In 2003 the Alaska Legislature modified AS 09.45.052(a) to add a claim for adverse possession where there was "uninterrupted adverse notorious possession of real property for 10 years or more because of a good faith but mistaken belief that the real property lies within the boundaries of adja-

---

**12.**   *Dillingham Commercial Co., Inc. v. City of Dillingham,* 705 P.2d 410, 415 (Alaska 1985); *see also N. Alaska Envtl. Ctr. v. State, Dep't of Natural Res.,* 2 P.3d 629, 637 n. 38 (Alaska 2000).

**13.**   *Gerstein v. Axtell,* 960 P.2d 599, 600 n. 2 (Alaska 1998) (internal quotation marks omitted).

**14.**   *See, e.g., N. Alaska Envtl. Ctr.,* 2 P.3d at 629 (right of way for electric transmission line); *Gerstein,* 960 P.2d at 600 (right of way for electric distribution lines); *Wessells v. State Dep't of Highways,* 562 P.2d 1042, 1049–51 (Alaska 1977) (implying that rights of way are for road construction by stating that one could not "reasonably expect a right-of-way" to be triangular in shape and that a "right-of-way may follow such route as is reasonably necessary for the [owner's] purposes").
   In contrast, we referred to a right to use a material site as a "material site right-of-way" in *Foster v. State, Dep't of Transp.,* 34 P.3d 1288, 1289 (Alaska 2001). However, we made other references to simply a "right-of-way" that was used for highway construction. *Id.* at 1289. This difference in terms suggests that "right of way," with no descriptive modifier, refers to the privilege to pass over land.

**15.**   *See* Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land § 1:22 (2010).

**16.**   Because we find that the deed unambiguously grants the Cowans only an easement, we do not reach the question of the parties' intent. We also find that the Cowans' alternative argument that Claude conveyed an exclusive easement in the disputed land to the Cowans was waived because the Cowans did not raise it below. *See Hagans, Brown, & Gibbs v. First Nat'l Bank of Anchorage,* 783 P.2d 1164, 1166 n. 2 (Alaska 1989) ("Issues not properly raised ... at trial are not properly before this court on appeal.").

**17.**   *See* AS 40.15.030 ("When an area is subdivided and a plat of the subdivision is approved, filed, and recorded, all streets, alleys, thoroughfares, parks and other public areas shown on the plat are considered to be dedicated to public use."); Ketchikan Gateway Borough Code (KGB) § 55.35.020(e)(3).

**18.**   We note that neither the parties nor the trial court raised the question of Claude Yeisley's ownership interest in the right of way prior to his death. We also note that the record is silent on both the date of Claude Yeisley's death and who received legal title to the land as Claude Yeisley's successor-in-interest upon his death.

**19.**   Former AS 09.45.052(a) (1991); *Tenala, Ltd. v. Fowler,* 921 P.2d 1114, 1118–19 (Alaska 1996).

**20.**   Former AS 09.10.030 (1962); *Hansen v. Davis,* 220 P.3d 911, 915 (Alaska 2009); *Tenala,* 921 P.2d at 1118.

cent real property owned by the adverse claimant." [21] The Legislature also modified AS 09.10.030 [22] with the intent of abolishing adverse possession in cases where the claimant does not have color of title.[23] The net effect of these changes was to limit Alaskans' adverse possession claims to cases where the claimant had either color of title or a good faith but mistaken belief that the claimant owned the land in question.[24]

On the first day of trial, the superior court held that it would apply the 2003 test for adverse possession because the Cowans had failed to bring an action for quiet title before the Legislature had changed the law. The court concluded that the Cowans' adverse possession claim under the current statute failed as a matter of law because the Cowans did not have color of title or a good faith but mistaken belief that the property was within the boundaries of their property. In doing so, the court effectively granted summary judgment on the Cowans' adverse possession claim.

We find that it was error to grant summary judgment on the Cowans' adverse possession claim because the 2003 version of AS 09.10.030 does not apply to this case, and there is a genuine issue of material fact as to whether the Cowans had adversely possessed the disputed land under the pre–2003 version of the statute.

**1. It was error to apply the 2003 version of AS 09.10.030 to the Cowans' claim.**

■■■ The Cowans argue that it was error to apply the 2003 version of AS 09.10.030 to their adverse possession claim because the Cowans were vested with title to the disputed land well before the statute was changed, the legislative history indicates that the changes were not intended to be applied to vested adverse possession rights, and the Legislature did not indicate that the law changing AS 09.10.030 was retrospective.

Alaska Statute 01.10.090 states that "[n]o statute is retrospective unless expressly declared therein." The 2003 amendments to AS 09.10.030 specifically stated that the amended version "applie[d] to actions that have not been barred before [July 18, 2003] by AS 09.10.030 as it read before [July 18, 2003]." [25] Thus, the changes to AS.09.10.030 were not intended to be retrospective.

We have held that "[a] statute will be considered [retrospective] insofar as it gives

**21.** Ch. 147, § 3, SLA 2003. AS 09.45.052(a) currently states (2003 amendment is in bold):
> The uninterrupted adverse notorious possession of real property under color and claim of title for seven years or more, **or the uninterrupted adverse notorious possession of real property for 10 years or more because of a good faith but mistaken belief that the real property lies within the boundaries of adjacent real property owned by the adverse claimant,** is conclusively presumed to give title to the property except as against the state or the United States.

**22.** Ch. 147, §§ 1–2, SLA 2003. AS 09.10.030 currently states (2003 amendment is in bold):
> (a) **Except as provided in (b) of this section, a** person may not bring an action for the recovery of real property or for the recovery of the possession of it unless the action is commenced within 10 years. An action may not be maintained **under this subsection** for the recovery unless it appears that the plaintiff, an ancestor, a predecessor, or the grantor of the plaintiff was seized or possessed of the premises in question within 10 years before the commencement of the action.
> **(b) An action may be brought at any time by a person who was seized or possessed of the real property in question at some time before the** commencement of the action or whose grantor or predecessor was seized or possessed of the real property in question at some time before commencement of the action, and whose ownership interest in the real property is recorded under AS 40.17, in order to (1) quiet title to that real property; or (2) eject a person from that real property.

**23.** Although the pre–2003 AS 09.10.030 purported only to bar a remedy, this court has stated that it can be the basis for a new title. *Ayers v. Day & Night Fuel Co.,* 451 P.2d 579, 581 (Alaska 1969). The Legislature's 2003 revisions essentially abolished the bar on the original landowner's remedy and were intended to prevent adverse possession under this statute. Minutes, House Judiciary Comm. Hearing on SB 93, 23rd Leg. 1st Sess. (May 18, 2003) (statement of Senator Wagoner, Member, Sen. Labor & Commerce Standing Comm.) (stating that purpose of bill was "to eliminate the possibility that a landowner will lose property to a squatter who has no claim to the property").

**24.** *Hansen,* 220 P.3d at 916 n. 7.

**25.** Ch. 147, § 5, SLA 2003. The effective date of the Act was July 18, 2003.

to pre-enactment conduct a different legal effect from that which it would have had without the passage of the statute."[26] The Cowans claim that they adversely possessed the disputed land for more than ten years before 1980. Because title automatically vests in an adverse possessor at the end of the statutory period,[27] the true owner's action to recover the property would thus have been barred by 1980 under former AS 09.10.030 if the Cowans in fact perfected their adverse possession claims by 1980. Applying the amended statute to the Cowans' case would therefore give the Cowans' pre-2003 conduct a different legal effect, effectively stripping them of their title.

Because the 2003 revision to AS 09.10.030 was not intended to be retrospective, and applying it to this case would produce retrospective results, it was error to apply the revised statute to the Cowans' adverse possession claim.

## 2. There is a genuine issue of material fact precluding summary judgment on the Cowans' adverse possession claim under former AS 09.10.030.

The Cowans also argue that they met all of the requirements for adverse possession under former AS 09.10.030,[28] and that the only contested question in this case was whether their possession of the disputed land was "hostile." The Cowans argue that they raised a genuine issue of material fact whether their possession of the disputed land was "hostile" because they presented evidence that they treated the disputed land as their own, held themselves out as owners of the land, and protected their right to exclusive use of the land.

In response, Sharon Yeisley argues that the Cowans' use of the disputed land could not be "hostile" under the law because they had a legally protected right (an easement) to use the land, and they made no other use of the land besides that which was legally protected.

We find, as the superior court did in its Omnibus Order, that there may be a genuine issue of material fact regarding the existence of hostility.[29]

We have held that "[h]ostile possession does not imply that the adverse possessor bore ill will or aggression toward the true owner; it only means that the adverse possessor held the land in such a way that his interest in the property was incompatible with the record owner's interest."[30] "If the adverse possessor, without the true owner's permission, 'acted toward the land as if he owned it,' then his claim is hostile."[31] The test is an objective one.[32]

We have also stated that when possession has begun permissively, it cannot become hostile until the presumption of permissive use is rebutted "by proof of a distinct and positive assertion of a right hostile to the owner of the property."[33] Subsequent to the trial court's Omnibus Order, we decided *Hansen v. Davis*, which provides additional

---

**26.** *Eastwind, Inc. v. State*, 951 P.2d 844, 847 (Alaska 1997) (internal quotation marks omitted).

**27.** *Hubbard v. Curtiss*, 684 P.2d 842, 849 (Alaska 1984).

**28.** "In order to acquire title by adverse possession, the claimant must prove, by clear and convincing evidence, ... that for the statutory period his use of the land was continuous, open and notorious, exclusive and hostile to the true owner." *Nome 2000 v. Fagerstrom*, 799 P.2d 304, 309 (Alaska 1990) (citations and quotation marks omitted). Under former AS 09.10.030, the statutory period for adverse possession without color of title was ten years.

**29.** The superior court stated: "[T]he facts sworn to by [Ellen] Cowan in her first affidavit, if be-

lieved by a jury, could theoretically rise to the level of hostility even despite the strong presumption created by permissive use."

**30.** *Glover v. Glover*, 92 P.3d 387, 392 (Alaska 2004).

**31.** *Id.* (quoting *Smith v. Krebs*, 768 P.2d 124, 126 (Alaska 1989)).

**32.** *Smith*, 768 P.2d at 126 (citing *Peters v. Juneau–Douglas Girl Scout Council*, 519 P.2d 826, 832 (Alaska 1974)).

**33.** *City of Anchorage v. Nesbett*, 530 P.2d 1324, 1329 (Alaska 1975) (quoting *Ayers v. Day & Night Fuel Co.*, 451 P.2d 579, 581 (Alaska 1969) (internal quotation marks omitted)).

guidance on the concept of "hostility" in the context of easements.[34]

When the trial court issued its Omnibus Order, it found that there was a genuine issue of material fact regarding the existence of hostility but failed to explain the basis of this finding. Because it was error to apply the revised adverse possession statute and the Cowans presented evidence that might support a finding of adverse possession under the former statute, we reverse and remand on the issue of adverse possession. On remand, the trial court should determine whether there is a genuine issue of material fact regarding any of the factors of adverse possession under the pre–2003 statute in light of our holding in *Hansen*. Additionally, the trial court should determine specifically which of the Cowans' activities on the 30–foot right of way, if any, constitute "hostile" activity and when each of those activities took place. The trial court may either reexamine the facts in the record as it stands, or reopen the record and take new evidence to make these determinations.

## C. The Superior Court's Ruling That The Disputed Land Was Validly Dedicated To The Public Is Vacated And Remanded.

■ The Cowans argue that the disputed land was not validly dedicated to the public because the plats through which the land was dedicated were invalid; as owners of the disputed land or holders of an easement, they argue that their signatures were required on the plats to make them valid.

Alaska law allows for the dedication of land for public use through the subdivision process.[35] Former AS 40.15.030, in effect in 1980 and 1981, stated: "When an area is subdivided and a plat of the subdivision is approved and recorded, all streets, alleys, thoroughfares, parks and other public areas shown on the plat are deemed to have been dedicated to public use."[36] Thus if either plat 80–9 or 81–40 was validly approved and recorded, the disputed land was validly dedicated to public use.

■ The Cowans argue that, because the Ketchikan municipal code in effect in 1980 did not give the Platting Board the discretion to omit the signature of easement holders, "it follows that the Borough intended that certificates of ownership and consents be signed by all parties having any interest of record" in plat 80–9.[37] They offer no evidence to support this claim. They also argue that the Borough should have exercised its discretion to require the Cowans' signatures for dedication of plat 81–40, but they give no reason why the Platting Board erred in failing to do so.

■ There was no language in the Ketchikan municipal code in effect March 1980— when plat 80–9 was approved—indicating that the signatures of easement holders in the dedicated land were required to approve and record a subdivision plat.[38] The Ketchi-

---

**34.** 220 P.3d 911, 916–17 (Alaska 2009) (determining that what constitutes "unreasonable interference" sufficient to trigger prescriptive period for extinguishing easement by prescription is heavily fact dependent; temporary improvements to unused easement area that are easily removable will not trigger prescriptive period).

**35.** AS 40.15.030.

**36.** In 1988 the Legislature modified the statute to substitute "considered to be" for "deemed to have been." Ch. 161, § 32, SLA 1988. Likewise, KGB § 55.35.020(e)(3) provides: "[u]pon recordation of the final plat, all . . . easements, or rights-of-way shown on the plat shall, and are deemed to have been dedicated to public use. Any such areas not dedicated to public use must be clearly marked as not dedicated on the face of the plat."

**37.** The Cowans also argue that the Borough acted unreasonably in failing to obtain their signatures on the plats because it knew or should have known of the Cowans' adverse possession claim. But they only point to Harold Cowan's objection to the preliminary 1980 plat that he had a "30 foot right-of-way," and to a copy of Ellen Cowan's letter to the Borough in which she stated that she was "holding a deed to [the] existing 30 ft right of way." Because these statements could be interpreted as claims that the Cowans owned a right-of-way easement in the land, rather than claims that they owned the land outright, these statements alone would not put the Borough on notice of an adverse possession claim.

**38.** Both the Borough and the Cowans agree that in March 1980 the Ketchikan municipal code provided: "The subdivider shall comply with all State laws concerning dedication of all streets . . . and easements for public purposes by the

kan municipal code in effect in 1981 when plat 81–40 was recorded gave the Platting Board the discretion to omit the signatures of parties owning "rights-of-way, easements or other interests that cannot ripen into fee." [39] It is therefore clear that the Cowans' signatures were not required to validate the plats if the Cowans held only an easement interest in the land.[40]

If the superior court finds that the Cowans held only an easement interest in the disputed land, its ruling that the land was validly dedicated to the public because the Cowans' signatures were not required to validate plats 80–9 and 81–40 is correct. If the superior court determines on remand that the Cowans had obtained fee title to the disputed land through adverse possession before 1980, however, the Cowans' signatures would have been required to validate both plats, and thus the dedication of the land to the public through those plats would be invalid. We therefore vacate the superior court's decision on this issue so that it may make a new determination on remand after it determines whether the Cowans adversely possessed the disputed land prior to 1980.

### D. Neither The Cowans' Nor Sharon's Claims Are Barred By Waiver, Laches, Or Estoppel.

We find no merit in either the Borough's or the Cowans' waiver, estoppel, and laches arguments.

#### 1. The Cowans' claims are not barred by waiver, laches, or estoppel.

The Borough argues that the Cowans waived their claims by failing to pursue them after the plats were recorded in 1980 and 1981, and by allowing their 1986 quiet title action to lapse for want of prosecution. It also argues that the Cowans' claims should be barred by laches and equitable estoppel because the Borough was prejudiced by the Cowans' delay in pursuing them.

In response, the Cowans argue that they never intended to waive their right to the disputed land, and that the Borough was not prejudiced by the delay.

Although the superior court made no ruling on the Borough's arguments in its Omnibus Order or final judgment, the court's silence on the Borough's arguments constituted an implicit ruling that the Cowans' claims were not barred by waiver, estoppel, or laches.

We have stated: "Neglect to insist upon a right only results in an estoppel, or an implied waiver, when the neglect is such that it would convey a message to a reasonable person that the neglectful party would not in the future pursue the legal right in question." [41] An implied waiver requires "direct, unequivocal conduct indicating a purpose to abandon or waive the legal right...." [42]

Although the Cowans did not pursue legal action after plats 80–9 and 81–40 were recorded, Ellen Cowan did tell the Borough that she had "no intention of opening up this right of way to anyone." She also affied that the Cowans did not pursue their 1986 quiet title action because Sharon had stopped her plans to develop the disputed road. The Cowans' behavior thus did not clearly, directly, or unequivocally indicate

owner(s) and wife (wives) of the owner(s); if the lands dedicated are mortgaged, the mortgagee shall also sign the plat." Former KGB 49.20.040(d)(5)(e).

**39.** KGB 55.35.020(f)(8)(b).

**40.** We also note that there is a question whether the Cowans have standing to complain about the lack of signatures on the plats that were publicly dedicated to the Borough if they only held an easement interest in the land. We have stated that a plaintiff must establish that the plaintiff has "an interest which is adversely affected by the complained-of conduct" in order to have standing to sue. *Keller v. French*, 205 P.3d 299,

304 (Alaska 2009). Because the Cowans' easement interest in the disputed land is essentially identical to the interest they would hold as members of the public if the land was publicly dedicated, they would not have the adversely affected interest necessary for standing unless the superior court finds on remand that they obtained title to the land through adverse possession.

**41.** *Powers v. United Servs. Auto. Ass'n,* 6 P.3d 294, 299 (Alaska 2000) (quoting *Airoulofski v. State,* 922 P.2d 889, 894 (Alaska 1996)).

**42.** *Milne v. Anderson,* 576 P.2d 109, 112 (Alaska 1978).

that they would not pursue a quiet title claim in the future, as required for a finding of both waiver and estoppel.[43]

The Borough also failed to prove whether, and to what extent, the Borough and others were prejudiced by the delay—a required element of estoppel and laches.[44] The Borough argues that it was prejudiced because it did not collect tax revenue on the disputed land, but it presents no evidence regarding how much the tax revenue would be. The Borough also argues that the lots created by plat 81–40 would have no access to the road if the Cowans owned the right of way, but the Cowans' claim that alternative access routes exist creates a question of fact regarding how prejudicial the Cowans' ownership of the disputed land would be.

Because the Borough offered insufficient evidence to support its arguments, we hold that the superior court did not err in implicitly ruling that the Cowans' claims were not barred by waiver, estoppel, or laches.

### 2. The superior court did not err in ruling that Sharon's claims are not barred by waiver, laches, and estoppel.

The Cowans argue that Sharon waived her claims by failing to pursue them during the Cowans' previous quiet title lawsuit that was dismissed for lack of prosecution, and that Sharon's unreasonable delay in bringing this lawsuit prejudiced them.

The superior court ruled that Sharon's arguments were not barred by waiver, laches, or estoppel because there were "many conceivable reasons, other than acquiescence, that might explain why [Sharon] did not force the litigation."

The Cowans present no evidence of waiver, estoppel, or laches besides Sharon's failure to oppose the 1992 dismissal of the Cowans' first quiet title action. But as the superior court stated, there are many conceivable reasons other than acquiescence that would explain why Sharon did not force the litigation in the face of the Cowans' failure to prosecute. Sharon's failure to force the litigation cannot reasonably be viewed as a waiver of her property rights, nor would it be reasonable for the Cowans to rely on her lack of action as an assertion that she did not own the land. Because Sharon had no obligation to force the continuance of the Cowans' first quiet title action, she did not unreasonably delay in bringing her counterclaims. The superior court thus did not err in ruling that Sharon's arguments were not barred by waiver, estoppel, or laches.

### E.  Attorney's Fees Are Vacated.

In light of our decision, we vacate the award of attorney's fees.[45]

## IV.  CONCLUSION

For the reasons discussed above, we AFFIRM in part, REVERSE in part, VACATE the award of attorney's fees, and REMAND for further proceedings consistent with this

---

43. See Carr–Gottstein Foods Co. v. Wasilla, LLC, 182 P.3d 1131, 1136 (Alaska 2008) ("Waiver is generally defined as the intentional relinquishment of a known right.") (internal quotation marks omitted); Tufco, Inc. v. Pac. Envtl. Corp., 113 P.3d 668, 671 (Alaska 2005) ("A party claiming equitable estoppel must prove four elements: (1) an assertion of a position by word or conduct; (2) reasonable reliance on the assertion; (3) resulting prejudice; and (4) the estoppel will be enforced only to the extent that justice requires.").

44. See Tufco, 113 P.3d at 671; Anchorage Citizens for Taxi Reform v. Municipality of Anchorage, 151 P.3d 418, 425 (Alaska 2006) (citing State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell, 8 P.3d 351, 358–59 (Alaska 2000)) ("Laches operates to bar a claim when a court finds one party caused unreasonable delay in

seeking relief that resulted in prejudice to the other party."); Pavlik v. State, Dep't of Cmty. & Reg'l Affairs, 637 P.2d 1045, 1047–48 (Alaska 1981) (finding that there is an interdependence between the elements of delay and prejudice in the laches analysis).

45. We note that the trial court did not have the benefit of Beal v. McGuire, 216 P.3d 1154, 1178 (Alaska 2009) (considering validity of nominal offers of judgment made at outset of litigation), when it awarded attorney's fees in this case. In this case, Sharon Yeisley served a $1 offer of judgment on August 31, 2006, approximately six weeks after the complaint was filed. In addition, it was error to award both Rule 82 and Rule 68 attorney's fees; a party may receive the greater of Rule 68 or Rule 82 fees, but not both. See Ellison v. Plumbers & Steam Fitters Union Local 375, 118 P.3d 1070, 1078 (Alaska 2005).

opinion on the Cowans' adverse possession claim.

| | 1973 Deed |
| --- | --- |
| | 1971 Deed |
| | 1960/63 Deeds to Smiths |
| | 1956 Deed to Cowans |

**Appendix**