*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| GLENN MICHAEL PRAX, ) | |
| PHILLIP G. PRAX, and ) | |
| MARIANNE P. KITTREDGE, ) | |
| ) | Supreme Court No. S-16223 |
| Appellants, ) | |
| ) | Superior Court No. 4FA-13-02190 CI |
| v. ) | |
| ) | O P I N I O N |
| VICTORIA J. ZALEWSKI, ) | |
| ) | No. 7190 – August 11, 2017 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas L. Blankenship, Judge.

Appearances: Christopher J. Bodle, Burns & Associates, P.C., Fairbanks, for Appellants. No appearance by Appellee Victoria J. Zalewski.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

CARNEY, Justice.

## I.     INTRODUCTION

After the family that owned a Fairbanks parking lot prevented the neighboring property owner from using it, the neighbor filed an adverse possession claim for the lot in question. The trial court ruled that from 2002 to 2012 the neighbor had perfected an adverse possession claim to the lot and held that amendments made to the

relevant law in 2003 did not apply to the neighbor's claim because her period of possession began in 2002. The family appeals, arguing that the 2003 statutory changes should have been applied to this case. We agree; therefore we reverse the trial court's ruling and remand the case for further proceedings.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In 1994 Victoria Zalewski purchased a 60 foot by 90 foot rectangle of land on Mary Ann Street in Fairbanks (Lot 8A). Just south of Lot 8A is a parking lot. Although this parking lot is recorded as being part of a larger adjacent lot known as Lot 9A, no boundary line has ever been apparent between Lot 8A and the parking lot. Zalewski never had her lot surveyed and mistakenly assumed when she purchased Lot 8A that it included the parking lot.

Prospector Outfitters obtained Lot 9A — including the parking lot — in 1994, and in 2007 conveyed the lot to Glenn Michael Prax, Phillip G. Prax, and Marianne P. Kittridge (the Praxes). Various members of the Prax family shared in the ownership and management of Prospector Outfitters and its properties before and after the 2007 transfer of Lot 9A.

Zalewski had a duplex on her property, which she rented out and sometimes lived in. Zalewski and her tenants consistently used the parking lot for parking, entry, and exit. She and her husband maintained the parking lot, keeping it graveled and clear of snow and plants. They installed electrical outlets on the lot for headbolt heaters and paid for the electricity. Zalewski built a shed on the lot in 2008; she used the shed and other parts of the lot for storage. The duplex occupants received mail at a mailbox placed within the parking lot.

Zalewski consistently used the parking lot on Lot 9A, but her exclusive use ended during the summer of 2002. That summer the owners of neighboring Lots 10B

and 11B excavated their property to prepare it for construction, and they stored their equipment and materials — including a large dump truck — on the parking lot. This use of the property ended in autumn of 2002.

Glenn Michael Prax knew that Zalewski was using the parking lot and repeatedly attempted to talk to her about his family's ownership of the lot. Between 2001 and 2003 he left two notes at the duplex explaining his family's claim to the property and suggesting some discussion about the boundary. Around 2005 he spoke to a tenant of the building about the issue, and in 2009 or 2011 he spoke to Zalewski herself about the boundary. He explained that his family owned the parking lot, but he received only a noncommittal response from Zalewski. In 2012 and 2013 he sent letters to Zalewski outlining the Praxes' claim to the property, but he received no response. After his last attempt in 2013 he set up sawhorses barring Zalewski from the parking lot. Zalewski removed the sawhorses and filed her lawsuit in July 2013.

### B.    Proceedings

Zalewski's complaint alleged that she had acquired title to the parking lot by adverse possession. She later amended her complaint to include a prescriptive easement claim over the parking lot. The Praxes filed oppositions and counterclaims, asking for judgment quieting title to the parking lot in their favor and arguing that any alleged use of the parking lot was by their permission. Zalewski never argued that she possessed the land under color of title.

In July 2014 the Praxes moved for summary judgment, arguing that Zalewski's use of the parking lot did not satisfy the elements of adverse possession. They argued that Zalewski "had to show that she had a 'good faith, but mistaken belief that the [parking lot] lies within the boundaries of [her] adjacent real property,' " as required by the 2003 version of AS 09.45.052. Zalewski countered that the *pre*-2003 version of the statute contained no good-faith requirement, and that the 2003

amendments did not apply to an adverse possessor whose title had not vested by the time of the amendments, such as herself, because "such an adverse possessor would have an equitable interest by the time of the amendment" which the amendments were not intended to affect. Zalewski also claimed that she in any event had possessed the parking lot in good faith.

The trial court denied the Praxes' summary judgment motion and ruled that the 2003 amendments to the adverse possession statutes — and thus their requirement of good faith — did not apply to this case because Zalewski's period of possession had begun before the 2003 amendments took effect. The court relied on *Cowan v. Yeisley* in which we held that the 2003 amendments to AS 09.10.030 and AS 09.45.052 were not intended to be retrospective.[1] The trial court cited that case for the proposition that, because "any ten-year period . . . in this case" began before the amendments' effective date, the amendments did not apply to Zalewski.

The court held a three-day trial in June 2015. The parties stipulated that good faith was not at issue in light of the court's summary judgment ruling. Zalewski and her ex-husband testified, as did Philip, Joseph, and Glenn Michael Prax. The widow of the contractor who had overseen the excavation of Lots 10B and 11B testified that her husband had indeed occupied the parking lot with construction equipment through the summer of 2002.

The court again ruled that the good faith requirement of AS 09.45.052 did not apply because "any ten-year period asserted in this case must commence prior to the effective date" of the amendments — July 18, 2003[2] — and referred back to its analysis of the issue from its summary judgment order.

---

[1]     *Cowan v. Yeisley*, 255 P.3d 966, 973-74 (Alaska 2011).

[2]     Ch. 147, § 6, SLA 2003; *Cowan*, 255 P.3d at 973.

The court found that the use of the parking lot to store equipment in summer 2002 by the owners of Lots 10B and 11B was not consistent with Zalewski's claim to have exclusively possessed the parking lot since the 1990s. Zalewski therefore had to show that she had possessed the property for the ten-year span between September 1, 2002, and September 1, 2012, to prevail on her adverse possession claim.

The court found by clear and convincing evidence that Zalewski's use of the parking lot during this time was continuous, open, notorious, exclusive, and hostile to the Praxes' interest in the property. It found that Zalewski's use of the parking lot was not permissive because she had never acknowledged that her claim to the property was subordinate to that of the Praxes. The court reiterated that good faith was not required because the 2003 statutory amendments did not apply, but stated, "If Zalewski's good faith was an issue, this court would find that she was not in good faith as a result of the multiple attempts to contact her and her failure to respond to her neighbor who was trying in good faith to resolve her trespass in a neighborly manner."

The Praxes filed a motion for reconsideration after the court's decision issued, arguing once more that the court should have applied the statutes as amended in 2003. The court denied the motion and entered a final judgment granting Zalewski title to the parking lot. The Praxes appeal.

III. **STANDARD OF REVIEW**

Whether a given application of a statute is retroactive and whether retroactive application of the statute is permissible are both questions of law that we review using our independent judgment.[3]

_____

[3] *See Rush v. State, Dep't of Nat. Res.*, 98 P.3d 551, 553 (Alaska 2004) (stating that an appeal regarding whether a statute would have an impermissible retroactive effect "present[ed] a pure question of law"); *Eastwind, Inc. v. State*, 951 P.2d
(continued...)

## IV. DISCUSSION

### A. It Was Error Not To Apply The Amended Versions Of AS 09.10.030 And AS 09.45.052(a) To Zalewski's Adverse Possession Claim.

The Praxes raise one argument on appeal: that it was error for the trial court to apply the pre-2003 versions of AS 09.10.030 and AS 09.45.052(a), rather than their current versions, which would have required Zalewski to show that she possessed the parking lot in the good-faith belief that she owned the property. We hold that the Praxes are correct.

#### 1. The amended statutes require that adverse possessors act in a good-faith belief that they owned the property.

Before 2003 Alaska's adverse possession statutes did not require adverse possessors to have color of title or a mistaken belief that they already owned the land in dispute. Alaska Statute 09.10.030 at that time provided:

> A person may not bring an action for the recovery of real property, or for the recovery of the possession of it unless the action is commenced within 10 years. An action may not be maintained for the recovery unless it appears that the plaintiff, an ancestor, a predecessor, or the grantor of the plaintiff was seized or possessed of the premises in question within 10 years before the commencement of the action.[4]

The statute was "in form simply a statute of limitations," literally saying only that

---

**3** (...continued)
844, 847 n.8 (Alaska 1997) ("Whether application of the post-1993 wage determination scheme to pre-enactment public contracts would amount to a retroactive application of legislation is a pure question of law which we review de novo."); *Norton v. Alcoholic Beverage Control Bd.*, 695 P.2d 1090, 1092 (Alaska 1985) ("The dispositive issue is whether AS 04.11.360 operates retrospectively in violation of AS 01.10.090. Since this issue is one of statutory interpretation, the proper standard of review is the substitution of judgment test.").

**4** Former AS 09.10.030 (2002).

landowners had ten years to recover property from a person who was wrongfully in possession.[5] But we interpreted the statute "as the basis for establishing new title through adverse possession,"[6] whereby the adverse possessor — after ten years of "actual, open, notorious, continuous, exclusive, and hostile" possession — could establish new title to the property.[7] Claimants under this statute did not need a good-faith belief that the land they occupied was legally theirs, so long as they satisfied the other elements for adverse possession.[8]

Although good faith was not necessary for an adverse possession claim, Alaska's other adverse possession statute, AS 09.45.052, allowed certain types of good-faith claimants to take title after a shorter period of possession: "The uninterrupted adverse notorious possession of real property *under color and claim of title* for seven years or more is conclusively presumed to give title to the property except as against the state or the United States."[9] An adverse possessor with "color and claim of title" is one who in good faith possesses "a written instrument which purports . . . to pass title [of the land in question] to the claimant."[10] Such claimants had to possess the land for only seven years, rather than the ten-year limitations period that applied to everyone else.

---

[5] *Dault v. Shaw*, 322 P.3d 84, 92 (Alaska 2013).

[6] *Tenala, Ltd. v. Fowler*, 921 P.2d 1114, 1118 (Alaska 1996).

[7] *Bentley Family Tr., Bank of Cal. v. Lynx Enters., Inc.*, 658 P.2d 761, 766 (Alaska 1983) (quoting *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826, 832 (Alaska 1974)).

[8] *See Hansen v. Davis*, 220 P.3d 911, 915 n.7 (Alaska 2009) (explaining that good faith was not required for adverse possession before 2003).

[9] Former AS 09.45.052 (1991) (emphasis added), *amended by* ch. 147, § 3, SLA 2003.

[10] *Snook v. Bowers*, 12 P.3d 771, 780 (Alaska 2000).

The Alaska legislature amended these statutes in 2003 to eliminate bad faith adverse possession claims.[11] The ten-year limitations period in AS 09.10.030 remains effective as AS 09.10.030(a), but is now subject to a broad exception:

> An action may be brought *at any time* by a person who was seized or possessed of the real property in question *at some time* before the commencement of the action or whose grantor or predecessor was seized or possessed of the real property in question at some time before commencement of the action, and whose ownership interest in the real property is recorded under AS 40.17, in order to
>
> (1) quiet title to that real property; or
>
> (2) eject a person from that real property.[12]

In other words, the current version of AS 09.10.030, read alone, appears to allow a record owner to overcome *any* period of adverse possession and reclaim property, so long as the record owner (or a predecessors-in-interest) ever seized or possessed the land before commencing an action.

But adverse possession did not vanish in 2003; the legislature relocated the doctrine (with some alterations) to AS 09.45.052, which now reads:

> The uninterrupted adverse notorious possession of real property under color and claim of title for seven years or more, *or the uninterrupted adverse notorious possession of real property for 10 years or more because of a good faith but mistaken belief that the real property lies within the boundaries of adjacent real property owned by the adverse claimant*, is conclusively presumed to give title to the

---

[11]    Ch. 147, § 3, SLA 2003.

[12]    AS 09.10.030(b) (emphasis added).

property except as against the state or the United States.[13]

Claimants under color and claim of title thus retain their seven-year limitations period. Alaska Statute 09.10.030 no longer provides adverse possessors the path to title that it once did, but the new language in AS 09.45.052(a) re-opens the door for adverse claimants who occupy another's land in the good-faith belief that it lies within the boundaries of land they already own. As we summarized in *Hansen v. Davis*:

> [C]laimants must now show that they believed in good faith that the disputed land lies within the boundaries of their property in addition to proving, as they had been required to prove prior to the 2003 legislative amendments, that their use of the land was continuous, open and notorious, exclusive and hostile to the true owners for the statutory period.[14]

**2.     The 2003 amendments apply to Zalewski's claim.**

The trial court concluded that applying the 2003 amendments in this case would be a retrospective application which is prohibited under AS 01.10.090.[15] But the legislature expressly declared that the amendments applied to claims that had not vested before their 2003 enactment.[16] Zalewski's claim had not vested in 2003. The amendments therefore govern her claim.

In *Cowan v. Yeisley* we considered the 2003 amendments' effect on adverse possessors who "were vested with title to the disputed land well before the statute was

---

[13]     AS 09.45.052(a) (emphasis added).

[14]     220 P.3d 911, 915 n.7 (Alaska 2009).

[15]     "No statute is retrospective unless expressly declared therein." AS 01.10.090.

[16]     Ch. 147, § 5, SLA 2003.

changed."[17] We concluded that "the legislative history indicates that the changes were not intended to be applied to vested adverse possession rights."[18] When it amended the statute the legislature stated: "AS 09.10.030, as amended in secs. 1 and 2 of this Act, applies to actions that have not been barred before [July 18, 2003] by AS 09.10.030 as it read before [July 18, 2003]."[19] Because the Cowans' action to recover the property would have been barred against the vested right of the adverse possessor in that case long before the passage of the amendments, we held that the 2003 amendments did not apply.[20] We concluded that applying the amendments would have been contrary to the legislature's intent.[21]

Such is not the case here. The 2003 amendments apply to "actions that have not been barred" before July 18, 2003.[22] The trial court here found that Zalewski's possession began on September 1, 2002. Zalewski's claim could not have vested between that date and the enactment of the 2003 amendments, so the Praxes' action to recover their property was never "barred" before July 18, 2003. The 2003 amendments therefore apply to Zalewski's claim.

**B.  Resolution Of This Case Requires Remand And Additional Factual Findings.**

Because the court's reliance on the pre-2003 statutes was erroneous, we must reverse its decision and remand for reconsideration according to the amended

---

[17]  255 P.3d 966, 973 (Alaska 2011).

[18]  *Id.*

[19]  Ch. 147, § 5, SLA 2003.

[20]  *Cowan*, 255 P.3d at 974.

[21]  *Id.*

[22]  Ch. 147, § 5, SLA 2003.

statutes. On remand the court must also make additional factual findings.

Zalewski must be given an opportunity to litigate the issue of her good faith, meaning whether she believed in good faith that she was the legal owner of the contested property. The parties stipulated that good faith would not be at issue during trial given the trial court's ruling on summary judgment. Although the trial court in its decision stated that were the issue before it, it "would find that [Zalewski] was not in good faith," the Praxes acknowledge that this statement was "dictum" regarding an issue that was not properly before the court.

We also note that Zalewski's complaint included a prescriptive easement claim over the parking lot. Zalewski may wish to pursue this claim even if title to the lot is denied her.

## V. CONCLUSION

We therefore REVERSE the judgment of the trial court and REMAND for further proceedings consistent with this opinion.