*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JOHN REEVES and FAIRBANKS GOLD CO., LLC, | ) ) ) | Supreme Court No. S-17884/17904 |
| Appellants and Cross-Appellees, | ) ) ) ) | Superior Court No. 4FA-12-02133 CI |
| v. | ) ) | O P I N I O N |
| GODSPEED PROPERTIES, LLC and GOLD DREDGE 8, LLC, | ) ) ) ) | No. 7617 – September 16, 2022 |
| Appellees and Cross-Appellants. | ) ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Joseph W. Sheehan, Sheehan Law Office, Fairbanks, for Appellants/Cross-Appellees. Matthew T. Findley and A. William Saupe, Ashburn & Mason, P.C., Anchorage, for Appellees/Cross-Appellants.

Before: Maassen, Carney, Borghesan, and Henderson, Justices. [Winfree, Chief Justice, not participating.]

BORGHESAN, Justice.

## I.   INTRODUCTION

When one party has an easement across land owned by another, the interests of the parties must be balanced so that the landowner can use the property to the

degree consistent with the purpose of the easement. This rule of reasonable accommodation is at the heart of the issues presented in this appeal.

The superior court ordered the landowner to temporarily remove a tourist railway it had built across an easement to allow the easement holder to build a paved road capable of dedication as a public right-of-way. The court required the railway, once reinstalled, to be operated in ways designed to lessen interference with use of the road. Further, the court ruled that the landowner would be liable for any increased construction and dedication costs the easement holder incurred as a result of the railway crossing.

On appeal the easement holder argues that the court erred by permitting the landowner to make reasonable use of land covered by the easement; allowing the landowner to build permanent improvements in the easement; limiting the road width to 60 feet when the width of the granted easement was 100 feet; permitting improvements that would allegedly interfere with the ability to dedicate the easement; and failing to account for time needed to obtain administrative approvals when setting a road construction schedule. The landowner cross-appeals, claiming it is the prevailing party entitled to attorney's fees. Seeing no error in the superior court's rulings, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Godspeed Properties, LLC owns a parcel of land (MS-1724) that is adjacent to John Reeves's parcel of land (MS-1709).[1] Godspeed also owns a lot containing an old gold dredge (Gold Dredge 8) maintained as a tourist attraction.

---

[1] For a more detailed description of the history of MS-1724 and MS-1709, see *Reeves v. Godspeed Properties, LLC (Reeves I)*, 426 P.3d 845, 847-49 (Alaska 2018). There is also a visual sketch of the relevant properties attached as an appendix to that opinion. *Id.* at 862.

The deed to MS-1724 contained a reserved easement allowing the easement holder to cross MS-1724 to reach other properties, including Reeves's land. The deed stated that the easement was "a dedicatable easement for ingress, egress, and utilities, 100 feet in width."

Godspeed acquired MS-1724 in 2009. Reeves then informed Godspeed that Reeves had rights to the easement running through MS-1724 and offered to sell the easement to Godspeed. The parties negotiated for several years but were unable to come to an agreement. Meanwhile Godspeed developed MS-1724 as an integrated tourist attraction and built a railway encroaching on Reeves's easement that takes visitors to see Gold Dredge 8.

In 2012 the Fairbanks North Star Borough granted Reeves preliminary plat approval to subdivide his parcel of land. The plat included Reeves's plan to dedicate 60 feet of his easement across MS-1724 as a public right-of-way to access the subdivision.

After negotiations between Reeves and Godspeed derailed, Reeves constructed a dirt road on the easement. Godspeed then built a berm on the easement and blocked access.[2]

## B.    Proceedings

### 1.    *Reeves I*

The parties litigated the validity and continued existence of Reeves's easement. In 2012 Godspeed filed a complaint against Reeves to quiet title. Godspeed also sought to enjoin Reeves from paving the road in the easement until the court could determine whether the easement was valid. The superior court granted a preliminary injunction, noting that Godspeed's tourist attraction draws a "significant number" of visitors during the tourist season.

---

[2]    *Id.* at 847-48. The parties do not dispute these facts.

After ample motion practice the superior court determined that the deed to MS-1724 created a valid easement, to which Reeves and his company were successors-in-interest. The parties then proceeded to trial on whether the easement had been extinguished by prescription due to mining activities in the easement, including the placement of gravel piles, equipment, and a processing plant. The superior court found that the plant had operated for 15 years in the easement and that the plant's activities impeded travel in the easement. The court concluded that the easement was entirely extinguished by prescription because the plant unreasonably interfered with Reeves's use of the easement.

Both parties appealed.[3] Godspeed argued that the easement had never been created, while Reeves argued that the easement had not been terminated by prescription.[4] We held that a valid easement appurtenant[5] was created in the deed to MS-1724.[6] The clear intent of the deed was "to create an easement that was capable of being dedicated."[7]

---

[3]     *Id.* at 849.

[4]     *Id.*

[5]     An easement appurtenant "is a right to use a certain parcel, the servient estate, for the benefit of another parcel, the dominant estate." *SOP, Inc. v. State, Dep't of Nat. Res., Div. of Parks & Outdoor Recreation*, 310 P.3d 962, 969 n.32 (Alaska 2013) (quoting 25 AM. JUR. 2D *Easements and Licenses* § 8 (2004)). Easements appurtenant "run with the land and continue to benefit the dominant estate." *Reeves I*, 426 P.3d at 850.

[6]     *Reeves I*, 426 P.3d at 851.

[7]     *Id.* at 850.

We also ruled that easements may be partially extinguished by prescription.[8] We held that the plant extinguished the part of the easement upon which it stood, but the other mining activities did not sufficiently interfere with the easement to extinguish it entirely.[9] Because there was a remaining question of where precisely the plant sat within the easement, we remanded for the superior court to determine the extent to which the plant occupied (and therefore terminated a portion of) the easement.[10]

### 2.     On remand

The superior court enjoined Reeves from building his road until it could assess the plant's location in the easement and remand proceedings were complete. The court determined that the injunction was appropriate because Reeves was adequately protected:  Reeves's parcel of land was not landlocked, so he could access his land through a different road.

The superior court held a trial on the location of the plant and issued its decision in December 2019.  It found that Godspeed failed to show that the gold plant protruded into the easement; the court therefore concluded that no portion of the easement had been terminated.  The court then recognized its responsibility to balance the parties' interests and determine whether Godspeed could use the easement without unreasonably interfering with Reeves's rights.[11]  Because neither party had presented

---

[8]     *Id.* at 853.

[9]     *Id.* at 853-54.

[10]     *Id.* at 854-55.

[11]     *See Williams v. Fagnani*, 228 P.3d 71, 74 (Alaska 2010) (explaining that to determine whether there is an unreasonable interference, the "interests of the parties must be balanced to strike a reasonable accommodation that maximizes overall utility to the extent consistent with effectuating the purpose of the easement" (quoting
(continued...)

evidence on this issue, the court ordered Godspeed to submit a detailed plan showing how Godspeed proposed to make use of the easement in a manner reasonably compatible with Reeves's use of the easement. The court also ordered Reeves to file a response.

Both Godspeed and Reeves complied. In June 2020 the court held a hearing on Godspeed's plan. Godspeed notified the court that it would not be operating its railway tour in the summer of 2020 due to the COVID-19 pandemic, providing Reeves with "several more months of good weather, eight months of construction season without worr[ying]" about railway operations hindering construction. Reeves requested that the court lift the injunction to allow him to "immediately start construction and remov[e] things from this easement so that [he could] get something done th[at] summer."

Godspeed then addressed Reeves's concerns about the safety risks that the railway might pose to the public using the easement road. Godspeed promised to post a flagger at the crossing to hold traffic, which it stated would address the pertinent safety concerns. Godspeed also argued that its railway would pose minimal inconvenience to drivers on the road, as the train would not stop in the easement and would take no longer than 90 seconds to cross it.

Godspeed also challenged whether Reeves truly intended to dedicate the easement to the Borough. Reeves replied that it was "irrelevant" what his plans were; he might dedicate "tomorrow" or he might do so "next year" — "[t]he easement allows him to do it not on any time frame convenient to the servient estate [but] on his own time frame." The court asked Reeves if he was "ready to put a road in," "[r]egardless of what

---

¹¹ (...continued)
RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9 cmt. c (AM. LAW INST. 2000))).

his future plans might be about dedication." Reeves responded yes, he was prepared to "start building it" as soon as the court "lift[ed] the injunction."

### a. The superior court's initial reasonable accommodation order

Relying on Reeves's representations about his plans to immediately build the road, the superior court expedited its decision so that construction could begin that summer. In July 2020 the superior court issued an order requiring reasonable accommodation from both parties and vacating the preliminary injunction against Reeves.

As to Godspeed, the court required that it immediately remove its railway tracks, berms, and a steam pipe field display[12] from the easement so that Reeves could begin constructing a road. The court allowed Godspeed to reinstall the berms and tracks after road construction — but not the steam pipe field. Further, the berms (once reinstalled) were not to unduly impede the vision of drivers using the road. The court also prohibited the train from stopping in the easement. And the court allowed Godspeed to install wooden gates at the railway crossings with limitations: the gates would close to pause traffic only when the train crossed the road, but would remain open at all other times; the gates would never be locked; and the gates would be manually operated by Godspeed employees.

The court also required Godspeed to bear the full cost of removal and reinstallment, as well as any increased cost that Reeves reasonably incurred by constructing the road at the current grade of the railway crossings. And if Reeves dedicated the road, Godspeed would have to bear any increased costs of dedication

---

[12] The steam pipe field display was a part of Godspeed's train tour. The train would stop in the easement so that tour patrons could view and hear about the steam pipe field.

necessitated by the presence of the railway tracks — including the cost of "installing and maintaining any improvements required for governmental acceptance of the road's dedication." Finally, the court issued a permanent injunction prohibiting Godspeed from ever claiming that the easement was extinguished by prescription because of the railway crossings, gate, or berms allowed by the judgment.

As to Reeves, the court allowed him to construct his road on the easement, but the road itself was limited to 60 feet in width — the width that the record indicated would meet the Borough's dedication requirements. The court ordered Reeves to complete road construction by March 1, 2021.

### b. The parties' motions for reconsideration and clarification

Shortly after the court's order was issued, Reeves filed a motion for reconsideration. Reeves raised a new argument in that motion, asserting that the road construction deadline in the court's order was not feasible because the process of obtaining approval to dedicate the road would take over a year. Godspeed filed a motion for clarification, asking the court to confirm that Godspeed could reinstall its improvements even if Reeves's "road [wa]s not completed, for any reason, by March 1, 2021." Godspeed explained that it "d[id] not want to remove the tracks and berms only to have Reeves . . . not complete his road building" by the deadline, since such a scenario would "deal a devastating blow to Godspeed's ability to run [its train] tour" that summer. While the motions were pending, both parties appealed.

The superior court denied both Reeves's motion for reconsideration and Godspeed's motion for clarification. In denying Reeves's motion, the court addressed three of Reeves's arguments relevant to this appeal. First, as to Reeves's argument that he could not construct the road until he received Borough approval for public dedication of the road, the court found that the argument was raised for the first time in the motion

for reconsideration and therefore waived.[13] And not only was it waived, it was also contradicted by Reeves's prior representations to the court. The court pointed to the specific representations that it had relied on in setting a construction deadline. Reeves's affidavit, submitted in January 2020, stated that he would immediately begin building the road. At the June 2020 hearing, Reeves told the court that he intended to "immediately start construction" and that if the court lifted the injunction, he would "hire a surveyor to survey this road . . . and he w[ould] put in a road and [would] start building it and do it either himself or hire someone to do it." The court explained that it had "expedited its decision after the June hearing so that road construction could begin th[at] summer."

Second, as to Reeves's argument that the deadline unreasonably required him to build the road during winter, the court explained that Reeves "had since July 2, 2020 to construct the road" and that Reeves acknowledged the construction season in Fairbanks lasts through October. Because Reeves stated in June 2020 that he was ready to begin building immediately, the court concluded that the March 2021 deadline was not unreasonable.

And third, as to Reeves's argument that the court failed to address his need to maintain the road in the future, the court explained that its order provided Reeves the "right to make full use of the easement for maintenance purposes." The order expressly stated that Reeves "will still have the benefit of the full width of the easement for maintenance . . . and widening the road if he has a future need."

---

[13] The superior court relied on *Katz v. Murphy*, in which we held that "Alaska Civil Rule 77(k) . . . does not allow the moving party to raise new grounds as a basis for reconsideration; instead the rule only allows reconsideration of points that were overlooked or misconceived despite having been properly raised." 165 P.3d 649, 661 (Alaska 2007).

### c. The superior court's amended reasonable accommodation order and attorney's fees award

In February 2021, because the road that the judgment contemplated would be built in the summer of 2020 was not built, the parties sought to stay their appeals so that the superior court could address enforcement of the reasonable accommodation order. The superior court therefore requested that we return jurisdiction, and we did.

The parties submitted new construction plans to the superior court in the spring of 2021. Reeves's plan restated his argument that Godspeed should be enjoined from using the easement until "after Reeves . . . completed dedication of the easement," which he asserted would take "more than a year, maybe more than two years[,] or even three." Godspeed also filed a notice that it would not be operating tours during the summer of 2021 due to the pandemic.

The court held a hearing on whether modifications to the reasonable accommodation order were necessary. It then reviewed the record to see if there was evidence to support Reeves's argument that dedicating the road would take longer than one year. Because Reeves had presented no such evidence prior to the final judgment — and in fact had testified that he would construct the road regardless of whether he could dedicate the road — the court reaffirmed that Reeves had waived that argument. The court amended the order with new construction deadlines: Godspeed was to remove its improvements from the easement by June 15, 2021 and Reeves was to construct the road by March 1, 2022.

The superior court also awarded Reeves attorney's fees. It found that Reeves was the prevailing party on the main issue, which it defined as the " 'creation and continuing validity of an easement' across Godspeed's land," quoting our decision in *Reeves I*. Per Alaska Civil Rule 82(b)(2), the court awarded Reeves 30% of his attorney's fees.

After the superior court issued its amended reasonable accommodation order, the stay on the appeals was lifted. Neither Reeves nor Godspeed moved for a stay of the superior court's amended order and new construction schedule.[14] In briefing Godspeed represents that it has since removed the steam pipe field, but it appears that no other changes to the easement have been made.

On appeal Reeves challenges the superior court's reasonable accommodation order. Godspeed cross-appeals the attorney's fees ruling.

## III. STANDARDS OF REVIEW

Reeves challenges both the superior court's application of legal standards and its balancing of the parties' interests in ordering reasonable accommodation. We review the application of legal standards de novo.[15] We review the balancing of interests to strike a reasonable accommodation for abuse of discretion.[16]

Godspeed challenges the superior court's conclusion that Reeves is the "prevailing party" for purposes of attorney's fees. We review a superior court's prevailing party determination for abuse of discretion, and we will reverse only if it is manifestly unreasonable.[17]

---

[14] Although Godspeed requested a stay of the initial order, neither Godspeed nor Reeves sought a stay once the court amended the order and construction deadlines. And neither party moved this court for a stay pending appeal.

[15] *Jigliotti Fam. Tr. v. Bloom*, 497 P.3d 472, 477 (Alaska 2021).

[16] *Sykes v. Lawless*, 474 P.3d 636, 645 (Alaska 2020).

[17] *Schultz v. Wells Fargo Bank, N.A.*, 301 P.3d 1237, 1241 (Alaska 2013).

## IV.   DISCUSSION

### A.   The Superior Court Did Not Err By Balancing The Parties' Interests And Ordering Reasonable Accommodation.

Reeves argues that the superior court erred by allowing Godspeed to make certain uses of his easement. In *Williams v. Fagnani* we held that "the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude."[18] In deciding whether there is an unreasonable interference, the "interests of the parties must be balanced to strike a reasonable accommodation that maximizes overall utility to the extent consistent with effectuating the purpose of the easement."[19] There is no abuse of discretion in the way the superior court balanced the competing interests of the parties in this case.

In *Sykes v. Lawless* we assessed whether locked gates across an easement were an unreasonable interference.[20] The servient estate owner had installed the gates in order to protect his property from trespassers.[21] Although the estate owner had provided the easement holder with keys to the gates, the easement holder argued that the gates inconvenienced him and unreasonably interfered with his use of the easement.[22] Applying *Williams*, we first considered the purpose of the easement, which the superior

---

[18]   228 P.3d 71, 74 (Alaska 2010) (quoting RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9 (AM. LAW INST. 2000)).

[19]   *Id.* (quoting RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9 cmt. c).

[20]   474 P.3d at 645.

[21]   *Id.* at 640.

[22]   *Id.* at 640, 644.

court had determined was to provide access to a single family residence.[23] We then balanced the two parties' interests to determine whether the gates unreasonably interfered with that purpose.[24] We concluded that because the burden on the easement holder was minimal while the benefit to the servient estate owner was substantial, the superior court had appropriately allowed the servient estate owner to install the gates.[25]

As in *Sykes*, the superior court here identified the purpose of the easement and balanced the interests of Reeves and Godspeed. The purpose of the easement, as stated in the deed, is to be "dedicatable" (i.e., capable of being dedicated) and for "egress, ingress, and utilities." In other words, the purpose of the easement is to provide Reeves a route of access to his parcel of land that can be dedicated as a public right-of-way. The superior court then assessed whether Godspeed's use of the easement unreasonably interfered with Reeves's use.[26] It determined that two of Godspeed's uses were unreasonable and placed restrictions on them: Godspeed was ordered to remove

---

[23]     *Id.* at 644-45.

[24]     *Id.* at 645.

[25]     *Id.*

[26]     On appeal, Reeves argues that Godspeed's use of the easement is not for its own benefit. Reeves argues that Godspeed's improvements on the easement are actually for the benefit of Discovery Gold Tours, LLC (the company that owns Gold Dredge 8) and not Godspeed itself (the servient estate owner), so Godspeed's improvements are "not necessary for the enjoyment of MS 1724" and therefore not allowed. But the superior court already inquired into this issue in *Reeves I* and found that the same family owns both companies and that the two separate companies were formed for liability purposes only. Further, Reeves misinterprets the rule. The "holder of the servient estate is entitled to make *any use* of the servient estate that does not unreasonably interfere with enjoyment of the servitude." *See Williams v. Fagnani*, 228 P.3d 71, 74 (Alaska 2010) (emphasis added). Permissible uses are not, as Reeves suggests, strictly limited to those that are "necessary" to make use of the servient estate.

its steam pipe field permanently and to maintain its berms in a way that protects driver safety. But the superior court determined that Godspeed's railway and gate did not unreasonably interfere. It required that the gate remain unlocked and be manually operated by Godspeed employees. The train crossings would be "minor"; the train would cross the easement, at maximum, a total of 30 minutes per day and would run on a "relative[ly] set schedule." The railway tracks were already hardened for safe use by vehicular traffic. Noting the many other roads in Fairbanks with railway crossings, the court concluded that Reeves's use would not be unreasonably hampered by Godspeed's train.

Despite the superior court's careful balancing, Reeves raises several arguments challenging the reasonable accommodation order. His arguments can be grouped into four categories: (1) the accommodations allowed by the court are unreasonable because they are "permanent"; (2) the accommodations allowed by the court unreasonably interfere with Reeves's right to dedicate the easement; (3) the superior court applied the wrong rules in issuing its accommodation order; and (4) the order subjects Reeves to a future claim by Godspeed of termination by prescription. We address each in turn.

### 1. Accommodations are not necessarily unreasonable because they are "permanent."

Reeves argues that because Godspeed's berms, railway, and gate are "permanent," they unreasonably interfere with his use of the easement. Reeves relies on *Hansen v. Davis*, suggesting we ruled that permanent improvements are categorically unreasonable interferences with an easement.[27] The suggestion is incorrect. The issue in *Hansen* was whether a property owner's garden sufficiently interfered with an

---

[27]    220 P.3d 911, 916-17 (Alaska 2009).

easement to put the easement holder on "notice that the easement [wa]s under threat," thereby triggering the prescriptive period.[28] The portion of *Hansen* that Reeves cites — that "[a]s a general guideline . . . permanent and expensive improvements that are difficult and damaging to remove will trigger the prescriptive period" — is relevant to the issue of notice.[29] Permanent and expensive improvements are more likely to put the easement holder on notice of a hostile use so that the easement holder "may take steps to vindicate his rights by legal action."[30] If the easement holder, despite being on notice, fails to take legal action, the easement is terminated.[31]

But here, the focus of the inquiry is not notice; the inquiry is whether the property owner's use can be fairly balanced with the easement holder's enjoyment of the easement. A permanent and expensive improvement in the easement is not necessarily incompatible with or even burdensome on the easement holder's use of the easement. Reeves's suggestion that *Hansen* prohibits the servient estate owner from erecting "permanent" improvements in an easement is therefore incorrect.[32]

---

[28] *Id.* at 915, 916-17 (quoting 7 THOMPSON ON REAL PROPERTY § 60.08(b)(7)(i) (David A. Thomas ed., 2004)).

[29] *Id.* at 917.

[30] *Id.* at 916 (quoting *Peters v. Juneau–Douglas Girl Scout Council*, 519 P.2d 826, 832 (Alaska 1974)).

[31] *See Jigliotti Fam. Tr. v. Bloom*, 497 P.3d 472, 477-78 (Alaska 2021) ("[A] party claiming that an easement was extinguished by prescription must prove continuous and open and notorious use of the easement area for a ten year period by clear and convincing evidence." (quoting *Hansen*, 220 P.3d at 916)).

[32] Nor did we state a categorical rule in *Hansen* that "permanent" improvements are necessarily hostile uses in the prescriptive termination context.

## 2. The accommodations ordered by the superior court do not unreasonably interfere with Reeves's right to dedicate the easement.

Reeves argues that the accommodations ordered by the superior court interfere with his right to dedicate the easement.[33]  But the superior court expressly addressed Reeves's dedication concerns and crafted its order to protect Reeves's right to dedicate.  The court noted that Reeves offered limited evidence about what would be required for him to dedicate the easement.  The only evidence presented to the court was that Reeves's road would need to be 60 feet wide to comply with a Borough ordinance.  And Reeves did not identify any proposed use of the easement that would require the road to be built to the easement's full 100-foot width.  The court accordingly allowed Reeves to construct a road 60 feet in width so that it is capable of being dedicated under borough ordinance.[34]  The court did not impose any limits on what Reeves may or may not dedicate.

Reeves also argues that the presence of the railway creates safety risks that will hinder his dedication of the easement.  But the documents that Reeves relies on do not support that assertion; they merely state that Reeves may need to provide additional data to the Borough and make adjustments to ensure public safety before dedicating the

---

[33]  "Dedication" is "[t]he donation of land or creation of an easement for public use." *Dedication*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[34]  Reeves argues that the Borough, not the superior court, "has primary jurisdiction over dedications" and that "[o]nce the [e]asement is dedicated, . . . [its] use . . . will be governed by borough ordinance."  Reeves suggests that the superior court's order interferes with the Borough's authority to govern dedicated roads.  Not so.  The superior court relied on the Borough's ordinance in deciding the width of the road.  Further, the court left open the possibility of "widening the road if [Reeves] has a future need."  If Reeves decides to dedicate the road and can show that the Borough requires a road wider than 60 feet, he may be able to widen the road.

road. And the superior court, taking judicial notice that railway crossings on public roads are common in Fairbanks, determined that the presence of Godspeed's railway alone should not bar dedication of the road. Further, the court ruled that if the railway made dedication of the road more costly, Godspeed would pay for the increased cost — including costs incurred to address safety risks and to obtain government permits necessary for dedication. The superior court did not abuse its discretion in the way it accommodated Reeves's interest in dedicating the road.[35]

Reeves contends that given his right to dedicate the easement, Godspeed must "abstain from any use, the placement of any improvement, or the assertion of any claim regarding the [e]asement that would adversely affect Reeves'[s] decision to dedicate the [e]asement." In other words, Reeves seeks unfettered use of the easement. But our precedent contemplates reasonable limits on the easement holder when necessary for the servient estate owner's use.[36] Those reasonable limits apply even when the easement holder has a right to dedicate the easement.

> ### 3. The superior court correctly applied our precedent in balancing the parties' interests and ordering reasonable accommodation.

Reeves argues that the superior court improperly "exercised its equity power" in its reasonable accommodation order. This argument appears to stem from Reeves's belief that the court had no basis in law to order reasonable accommodation and

---

[35] Reeves also argues that potential future litigation costs unreasonably interfere with his use of the easement. Because he provides no support for this argument, it is waived. *Coppe v. Bleicher*, 318 P.3d 369, 379 (Alaska 2014) (affirming conclusion that argument was waived when argument "lacked citation to authority or a legal theory to support it"); *see also Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

[36] *E.g.*, *Hansen*, 220 P.3d at 916.

therefore resorted to equity to alter the rights that go with the easement. But the superior court did not apply equity, nor did it change the scope of the easement. The superior court, relying on *Williams*, followed our precedent in balancing the parties' rights and ordering accommodation, which is rooted in the common law of easements.[37] Although the superior court's decision on remand mentioned "[e]quitable [c]onsiderations" when discussing reasonable accommodations, the substance of the court's analysis applied our precedent — not equitable principles.[38]

Reeves also argues that the superior court incorrectly focused on Reeves's "need" for a 60-foot wide road instead of the 100-foot width granted in the deed. He argues that "need" is an "irrelevant" consideration in determining the rights of the easement holder, and he faults the superior court for failing to define "need." But Reeves's need for only 60 feet of the easement was indeed relevant to the superior court's balancing analysis. It was appropriate for the superior court to consider how much of the easement Reeves would need to develop a road capable of dedication so that, per *Williams*, the court could "maximize[] overall utility" of the land while still "effectuating the purpose of the easement."[39]

Reeves additionally appears to argue that *Williams*'s reasonable accommodation rule does not apply when the easement has "specific parameters." In other words Reeves believes that because his easement is defined as 100 feet wide, he should have unfettered use of those 100 feet and cannot be required to accommodate

---

[37]     *See Williams v. Fagnani*, 228 P.3d 71, 74 (Alaska 2010) (citing RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9 (AM. LAW INST. 2000)).

[38]     The superior court appears to have used the term "equitable" to mean a "fair" balancing of the parties' rights.

[39]     *Williams*, 228 P.3d at 74.

Godspeed's use. But in *Andersen v. Edwards* we rejected the argument that an easement holder has an "absolute right to clear" the entire width of the easement.[40] We explained that the grant of an easement "is not ordinarily to be construed as providing for a way as broad as the ground referred to."[41]

Reeves selectively quotes *Labrenz v. Burnett* to support his argument: "Where specific parameters . . . have been expressly set forth, . . . the expressed terms . . . are controlling . . . and consideration of what may be necessary or reasonable to the present use of the dominant estate [is] not controlling."[42] But *Labrenz* limited the rights of the *easement holder*. We held that when an easement holder seeks to make changes to the land, the easement holder cannot go beyond the express purpose and parameters of the easement.[43] Therefore the easement holder — not the servient estate owner — was bound by the specific parameters of the easement.[44]

---

[40] 625 P.2d 282, 286 (Alaska 1981) (holding that, although right-of-way was 100 feet wide, easement holder was not entitled to clear the full 100 feet and could only develop amount of land "reasonably necessary" for roadway); *see Dillingham Com. Co. v. City of Dillingham*, 705 P.2d 410, 415 (Alaska 1985) ("[T]he term 'right of way' is synonymous with 'easement.' ").

[41] *Andersen*, 625 P.2d at 286 (quoting W. W. Allen, Annotation, *Width of Way Created by Express Grant, Reservation, or Exception Not Specifying Width*, 28 A.L.R. 2d 253, 265 (1953)).

[42] 218 P.3d 993, 1000 (Alaska 2009). Reeves also cites *Andersen v. Edwards*, which does not support his argument either. 625 P.2d at 286-87 (holding that where right-of-way reservation does not specifically describe width of intended roadway and instead merely describes overall width of right-of-way, the easement holder is "entitled to make only reasonable use of the right-of-way").

[43] *Labrenz*, 218 P.3d at 1000.

[44] *Id.*

*Labrenz* further cuts against Reeves. Not only did we limit the easement holder's rights, we also allowed the servient estate owner to install a driveway across the easement.[45] We emphasized that the servient estate owner may utilize the easement in "any manner and for any purpose that does not unreasonably interfere with" the easement holder's rights.[46] Thus *Labrenz* confirms that Reeves is *not* entitled to develop the entirety of his 100-foot easement without regard to Godspeed's interests simply because the deed states the width of the easement. And like the driveway in *Labrenz*, Godspeed's railway crossings, berms, and gate are reasonable uses of the easement.

### 4. The superior court's order does not subject Reeves to a future claim of termination by prescription.

Reeves argues that the superior court's accommodation order allows Godspeed to pursue a future claim of termination by prescription based on Godspeed's use of the easement. But the superior court entered a permanent injunction barring Godspeed from ever claiming that its use of the easement per the court's order prescriptively extinguished the easement. Godspeed's use of the easement in accordance with the court's order will therefore not trigger a claim of prescription.[47]

---

[45] *Id.* at 1002.

[46] *Id.*

[47] *See Sykes v. Lawless*, 474 P.3d 636, 645 (Alaska 2020) ("The [servient estate owner's] gates are not an 'unreasonable interference' because they were approved by the court; the gates therefore could not be evidence in a future claim that the easement was extinguished by prescription."). Although Reeves points to the injunction as proof that the court allowed Godspeed to unreasonably interfere with the easement, we are not persuaded by this circular logic. The injunction was a belt-and-suspenders approach to protecting Reeves — not an admission by the court that it was sanctioning an unreasonable use.

**B.    The Superior Court Did Not Err By Requiring Reeves To Complete Construction Of His Road By March 2022.**

Reeves challenges the superior court's deadline for constructing his road. The court ordered in April 2021 that Reeves must construct his road by March 2022. Reeves argues that because he plans to dedicate the road, and because the dedication approval process will take over a year, he cannot begin construction until he receives dedication approval and therefore cannot meet the court's construction deadline.

This argument is waived. An issue raised for the first time in a motion for reconsideration is not timely and therefore not preserved for appeal.[48] Reeves raised the argument for the first time in his motion for reconsideration of the superior court's judgment on remand. The superior court acknowledged the argument upon reviewing the motion, but determined it was waived because Reeves had failed to raise it at any point before the court issued its judgment.

Although a waived argument may still be reviewed for plain error,[49] we see no plain error here. Plain error occurs when "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[50] The superior court set a reasonable construction schedule based on Reeves's own representations that he could promptly begin constructing the road. At a hearing in June 2020 Reeves told the superior court that he intended to "immediately start construction." Relying on that statement, the court expedited its decision so that road construction could begin that summer. Then, when Reeves failed to begin construction in 2020, the superior court

---

[48]    *Stephanie W. v. Maxwell V.*, 319 P.3d 219, 227 (Alaska 2014) (quoting *Stadnicky v. Southpark Terrace Homeowner's Ass'n*, 939 P.2d 403, 405 (Alaska 1997)).

[49]    *Morris v. Morris*, 506 P.3d 8, 14 (Alaska 2022).

[50]    *Katz v. Murphy*, 165 P.3d 649, 662 (Alaska 2007) (quoting *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001)).

held another hearing and set a new construction deadline of March 2022. That deadline was especially reasonable because Godspeed would not be running its railway during the summer of 2021, giving Reeves the unfettered ability to construct a road on the easement during that time.

Reeves did not request a stay of the court's amended order pending appeal. Reeves cannot now fault the superior court for his difficulty meeting the construction deadline despite failing to seek a stay. Because the superior court's amended construction schedule was reasonable at the time it was issued, and because Reeves failed to seek a stay, we affirm the superior court's construction deadline.[51]

C.     **The Superior Court Did Not Abuse Its Discretion By Determining That Reeves Was The Prevailing Party Entitled To Attorney's Fees.**

Godspeed challenges the superior court's determination that Reeves was the prevailing party for purposes of awarding attorney's fees. The prevailing party is "the one who is successful on the main issue of the action."[52] The party need not recover all of the relief prayed for; the party "may prevail even if it wins only one of many claims."[53] When determining the prevailing party, the superior court should ask the "objective question . . . whether [the party] obtained the relief it sought."[54] Prevailing

---

[51]     The construction deadline has now passed. We emphasize that parties wishing to stay the effect of a superior court order pending appeal must expressly seek that relief; it is not granted automatically. Alaska R. App. P. 205 ("A motion for a stay will normally not be considered by the supreme court unless application has previously been made to the trial court and has been denied . . . .").

[52]     *Schultz v. Wells Fargo Bank, N.A.*, 301 P.3d 1237, 1242 (Alaska 2013) (quoting *Taylor v. Moutrie-Pelham*, 246 P.3d 927, 929 (Alaska 2011)).

[53]     *Id.* at 1241.

[54]     *Id.* at 1242 (alterations in original) (quoting *Taylor*, 246 P.3d at 930).

party determinations are committed to the "broad discretion" of the superior court and will be overturned only if "manifestly unreasonable."[55]

The superior court, quoting our decision in *Reeves I*, defined the main issue of the suit as the " 'creation and continuing validity of an easement' across Godspeed's land." The superior court rejected Godspeed's attempt to reframe the case as involving two competing main claims (Godspeed's claim of prescriptive extinguishment and Reeves's claim for ejectment), because both claims rested on the easement's validity and continued existence. Because Reeves had prevailed in establishing the creation and continued existence of the easement, the court concluded that Reeves was the prevailing party. This was so, the court explained, even though Godspeed prevailed against Reeves's counterclaims and even though neither party prevailed on the issue of accommodation.

We see no abuse of discretion. We are not persuaded by Godspeed's attempt to characterize the main issue of the suit as "saving [Godspeed's] business by preventing [Reeves] from bulldozing a key component of it." Godspeed sued Reeves, asserting that the easement either did not exist or was extinguished. Throughout the first trial, first appeal, and proceedings on remand, Reeves argued that the easement was validly created and had not been terminated by prescription. We concluded that the easement was valid,[56] and on remand the superior court concluded that no portion of the easement had been extinguished. Reeves therefore prevailed in establishing the creation and continued validity of his easement — the main issue of this case.

---

**55**    *Id.* at 1241 (first quoting *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 721 (Alaska 2003); and then quoting *All. of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1123, 1126 (Alaska 2012)).

**56**    *Reeves I*, 426 P.3d 845, 851 (Alaska 2018).

Godspeed argues that the case was a "draw" because Reeves initiated this second appeal. But Godspeed cites no authority suggesting that a party that lodges an appeal cannot be the prevailing party for purposes of Rule 82 attorney's fees. Although Reeves did not obtain everything he sought below, a party need not recover all of the relief prayed for to be the prevailing party.[57]

Godspeed also argues that the case was a draw because it prevailed against Reeves on each of his counterclaims.[58] But we have cautioned against "merely count[ing] claims to determine prevailing party status."[59] Because "a party may prevail even if it wins only one of many claims,"[60] and because the superior court found that Reeves ultimately won on the main issue in this case, it reasonably concluded that Reeves was the prevailing party for attorney's fees purposes.

## V. CONCLUSION

For the reasons above, we AFFIRM the superior court's reasonable accommodation order and award of attorney's fees.

---

[57] *Schultz*, 301 P.3d at 1242.

[58] Godspeed relies on our decision in *Fernandes v. Portwine*, 56 P.3d 1, 7-8 (Alaska 2002). But there we explained that a superior court may "refus[e] to award either party's attorney's fees" when "neither party can be characterized as the prevailing party." *Id.* at 8 (quoting *City of Valdez v. Valdez Dev. Co.*, 523 P.2d 177, 184 (Alaska 1974)). Here the superior court reasonably characterized Reeves, and only Reeves, as the prevailing party.

[59] *Schultz*, 301 P.3d at 1241-42.

[60] *Id.* at 1241.